R. H. EAKLEY, ON BEHALF OF HIMSELF AND ALL OTHER TAXPAYERS OF THE CITY OF RALEIGH v. CITY OF RALEIGH, A MUNICIPAL CORPORATION.

(Filed 10 June, 1960.)

1. **Appeal and Error § 49—**

   Where a jury trial is waived, the findings of fact of the court are as conclusive and binding as a jury verdict if the findings are supported by any evidence.

2. **Elections § 4:   Municipal Corporations § 37—**

   Proceeds of water and sewer bonds may be expended in newly annexed areas notwithstanding that neither the bond ordinance nor the ballots in the election authorizing the issuance of the bonds disclosed such intent.

3. **Taxation § 4—**

   The contention that the issuance of water and sewer bonds by a municipality for improvements within annexed areas would violate Art. VII, Sec. 7 of the State Constitution because the residents of the areas annexed had not voted in the bond election, is untenable when the bonds have been approved by the electors residing within the city limits as they existed at the time of the election.

4. **Same:   Municipal Corporations § 36—**

   A municipality has the power to expend funds for the construction and operation of water and sewer facilities without a vote when such facilities are for the benefit of the citizens of the municipality, G.S. 160-239, G.S. 160-255, but extension of such facilities outside its corporate limits for the purpose of profit is a proprietary function requiring a vote of its citizens.

**5. Same—**

> When a bond election authorizes the issuance of water and sewer bonds for the benefit of the citizens of the municipality, but does not authorize such bonds for financial gain by the city from the sale of such services to those residing beyond its corporate limits, the expenditure of the proceeds in areas intended to be annexed by the city is properly restrained until the date such annexation is effected.

APPEAL by plaintiffs and defendant from *Craven, S. J.,* February 1960 Assigned Civil Term, of WAKE.

This action was begun by plaintiff Eakley on 18 February 1960. He seeks to enjoin the issuance and sale of bonds of the City of Raleigh authorized at an election held 11 August 1959, and if the sale of the bonds is not enjoined, to enjoin the use of the proceeds in any area which was not a part of the City when the electorate gave its approval to the proposed bond issue.

As the basis for the relief sought he alleges the City Council in June 1959 adopted ordinances authorizing the issuance of bonds (a) for the improvement and enlargement of the City's water system to supply water to the City, (b) for the construction or reconstruction of the streets of the City, (c) for the improvement and enlargement of the sanitary sewer system as operated by the City, (d) for the improvement and enlargement of the recreational system established and operated by the City including the acquisition of parks and playgrounds and other recreational facilities, (e) for the erection and enlargement of buildings for the use of the City's fire department and the furnishing of such buildings, (f) for the acquisition of fire engines, fire trucks, and other vehicles for use by the City's fire department, (g) for the extension of the City's fire alarm system; that the ordinances so adopted provided for the levying of a tax for the payment of the bonds and required submission to the citizens of Raleigh for their approval at an election to be held on 11 August 1959; that the election was called and held in accordance with the ordinances, at which election the citizens voted for issuance of the bonds, the vote in each instance being substantially two to one in favor of the issuance of the bonds; that the Board of Elections duly canvassed the votes and certified the result as required by law; that none of the bonds have been sold and delivered. He further alleges that at the time the City Council adopted the ordinances authorizing the submission of the question of issuing bonds to the people, the Council contemplated and intended to use the proceeds from the sale of said bonds in areas to be annexed to and incorporated within the City boundaries; that this intended use

by the City council was not on the ballots, the ballots merely stating in each instance the general purpose for which the bonds would be authorized without indicating in any manner the particular area in which the expenditures would be made; that the manner in which the questions were submitted to the voters did not disclose the true purposes of the proposed bond issues but concealed from the voters the true purposes thereof and lulled them into the belief that they were voting for the issuance of bonds for services and improvements within the then existing corporate limits of Raleigh; that pursuant to the plan of the City Council it caused a survey to be made for the purpose of annexing areas adjacent to the City as provided by G.S. 160-453.13 *et seq.*, and on 15 February 1960 approved an annexation report theretofore filed with it, which report set out in detail the intent to expend the proceeds or a part thereof from the sale of the bonds in areas to be annexed to the City; that the City caused notice to be published and fixed a date for the hearing on the proposed annexation plan as provided in G.S. 160-453.17. He alleged that the proposed use of funds in any area which was not within the corporate boundaries of Raleigh when the bond issue was submitted to the people would be an unlawful diversion and a misapplication of the proceeds of the bonds authorized by the people.

Frank Parker, Allen T. Stevens, W. N. H. Jones, George J. Moore, Jr., and W. C. Upchurch, citizens of Raleigh, were permitted to make themselves parties plaintiff and to adopt the complaint.

The City of Raleigh answered and admitted the allegations with respect to the adoption of ordinances approved by the electorate, the proposal to annex areas adjacent to the City and following the annexation to expend designated portions of the monies which would be derived from the sale of bonds in the areas so annexed. It denied the electorate was deceived by the form in which the questions were submitted to it and denied that the expenditures in the areas to be subsequently incorporated into the City, if made after they were brought within the corporate limits, would constitute a diversion or unlawful use of funds. It alleged the time limits to challenge the validity of the ordinance and election fixed by G.S. 160-385 and 160-387 had elapsed and that no proceeding had been instituted within the times so fixed.

The cause came on to be heard at the February 1960 Term of Wake on Plaintiffs' motion for a permanent restraining order. The parties waived a jury trial and agreed that the court might find the facts from the pleadings, affidavits, and other evidence offered by the parties and render final judgment on the facts found. To support

their respective contentions the parties offered evidence including pleadings, affidavits, copies of ordinances, notices published, and the form of the ballot submitted to the electorate. Typifying the questions submitted is the one relating to the water system:

"QUESTION NO. 1
FOR       AGAINST

"Shall the qualified voters of the City of Raleigh approve the bond ordinance which was adopted by the City Council of said City on June 1, 1959, and which (1) authorizes bonds of said City in an aggregate amount not exceeding $1,742,000 for the improvement and enlargement of the water supply system established and operated by the City to supply water to the City, including the acquisition of land or rights in land or equipment or apparatus required therefor, and (2) authorizes the levy and collection of an annual tax sufficient to pay the principal of and interest on said bonds; and also approve the indebtedness to be incurred by the issuance of said bonds?"

On the evidence submitted the court found these facts:

"4.   That Bond Ordinances Nos. 807, 808, 809, 810, 815, 816 and 817 referred to in plaintiff's complaint and amendment to his complaint, and defendant's answer, were duly adopted by the City Council of the City of Raleigh on June 1 and June 15, 1959 and were published in the manner and as required by the Charter of the City of Raleigh and by G.S. 160-384.   The first publication was made more than thirty days prior to the commencement of this action.

"5.   The question of the approval of the bonds provided for in the bond ordinances above referred to was submitted to the voters of the City of Raleigh at an election held August 11, 1959, at which election all of said bonds were approved.   Publication of the result of the election was duly made as required by law more than thirty days prior to the commencement of this action.

"6.   That the bond ordinances adopted by the City and the ballots used at said election clearly and fairly stated the questions to be voted upon by the electors of the City of Raleigh.   There is no evidence of fraud, deceit, bad faith or misrepresentation on the part of the governing body of the City of Raleigh in submitting the questions to be voted upon at said election.

"7.   That on February 1, 1960 the City Council of Raleigh adopted resolutions of intent to consider for annexation to the City of Raleigh of five separate areas adjacent to the City of Raleigh, described in said resolutions, and set March 7, 1960 as the date for a public hearing on the question of annexation of said areas in conformity with the provisions of G.S. 160-453.17.

"8. That on February 15, 1960 the City Council of Raleigh approved reports setting forth plans to provide services to said areas under consideration for annexation in conformity with G.S. 160-453.15 and as required by G.S. 160-453.17(c). There is nothing in the reports or in the evidence to indicate that the City of Raleigh proposes or intends to make expenditures of public funds to provide services to any of said areas prior to their annexation, but does propose and intend to make such expenditures after annexation, as set out in the plan, in the areas annexed.

"9. The City of Raleigh has for a number of years past maintained and operated water, sewer, park and recreation facilities both within and without the corporate limits of the City.

"10. That since the bond election held August 11, 1959 several areas adjacent to the City of Raleigh have been lawfully annexed to the City."

Based on these findings the court adjudged:

"1. That the bonds authorized by the City Council of Raleigh and approved by the voters of Raleigh at the election held August 11, 1959 are valid and when issued will be a binding obligation of the City of Raleigh.

"2. That the proceeds from the sale of all of said bonds may be expended within the City limits of Raleigh as they exist at the time the expenditure is authorized and are not limited to the City limits of Raleigh at the time of the bond election.

"(3. That the defendant is restrained from making any expenditure of the funds realized from the sale of any of the bonds within the areas under consideration for annexation by the City of Raleigh, according to the plan of annexation, until the effective date of annexation), at which time they may be expended in said areas."

The restraining order sought was denied. Plaintiffs excepted to findings #6, 9, and 10, and to the judgment and appealed. Defendant excepted to that portion of section 3 of the judgment in parentheses, as quoted above.

*Emanuel & Emanuel for plaintiffs.*
*Paul F. Smith, William Joslin, and Manning & Fulton for defendant.*

RODMAN, J. Plaintiffs' Appeal: When a jury trial is waived and the court is authorized to find the facts, its findings are as conclusive and binding as a jury verdict, if there is any evidence to support the findings. *Cotton Mills v. Local 584*, 251 N.C. 335, 111 S.E. 2d 484; *Seminary, Inc. v. Wake County*, 251 N.C. 775, 112 S.E. 2d 528;

*Goldsboro v. R. R.,* 246 N.C. 101, 97 S.E. 2d 486. There was evidence to support each of the findings. In fact, no evidence contrary to the findings was offered unless it necessarily follows as a matter of law that the form of the question submitted to the electorate was intentionally false and misleading and in fact deceived the public who, because of such form of question, understood that they were voting for bonds to provide monies to be expended solely within the corporate limits as they existed at the moment of the election. We do not think that such an intent or result should be implied by reason of the form in which the question was submitted.

Plaintiffs' exceptions then present these and only these questions: (1) Does the fact that the City Council contemplated when it passed the bond ordinance the annexation of additional territory and expenditures of a portion of the bond monies in the annexed territory subsequent to the annexation invalidate the bonds authorized by a majority of the citizens? (2) If not, will expenditure for water and other specified purposes in the areas within the corporate limits at the time of the expenditure but beyond the corporate limits when the ordinance was passed and the election held constitute an unlawful expenditure?

The answer to each question is no for the reasons so clearly stated in the opinion of *Denny, J.,* in *Upchurch v. City of Raleigh, ante,* 676.

Plaintiffs say to give recognition to these bonds as valid obligations of Raleigh would do violence to Art. VII, sec. 7 of our Constitution. The contention is without merit. Each bond issue has been approved by the electorate at an election called for the purpose of authorizing the issuance of the bonds.

Defendants Appeal: Defendant excepted to that portion of the judgment which enjoined it from spending any portion of the bond monies in the areas under consideration for annexation before they became a part of the City. Literally construed and taken out of context the language used is, we think, unduly restrictive; but when considered in relation to the questions which the court was called upon to decide we think it manifest that the court did not intend to enjoin expenditures by the City for direct benefit by its citizens. It intended to prohibit expenditures which would only indirectly benefit the citizens of the City by providing a profit from the furnishing of services to those outside its boundaries.

Municipalities have legislative permission to extend their sewer and water lines beyond corporate boundaries. G.S. 160-239 and 255. Such extentions may be made either because necessary to the effect-

ive operation of the improvement within the City or to provide services for a profit beyond the corporate limits. Bonds for the latter purpose may be issued only when the electorate has expressly so authorized. *S. v. McGraw*, 249 N.C. 205, 105 S.E. 2d 659; *Grimesland v. Washington*, 234 N.C. 117, 66 S.E. 2d 794; *Holmes v. Fayetteville*, 197 N.C. 740, 150 S.E. 624.

Expenditures for parks and recreational facilities seem to fall within the class of water and sewer facilities when operated in a governmental capacity, that is, for direct benefit by the citizens of the municipality. G.S. 160-200(12), art. 12, c. 160 of the General Statutes.

Here the bond ordinances for water, sewer, and park facilities, submitted to and approved by the citizens, authorized expenditures for the construction and operation of such facilities for the benefit of the citizens of the municipality. The right to expend money for work outside the City to accomplish these purposes is recognized by plaintiffs. They say in their brief: "It is admitted that the City has authority to expend moneys outside of the city's corporate limits for the purpose of implementing, enlarging and improving the fundamental municipal services which are necessary for the citizens and inhabitants within its corporate limits."

The electorate was not called upon to and did not authorize expenditures for financial gain by the City from the sale of such services to those residing beyond the corporate limits when the expenditures were made. Because not so authorized the court enjoined the use of the funds for such proprietary purposes. When the judgment is read as a single pronouncement and not as disjointed parts, we think the portion objected to merely prohibits expenditures for those purposes, and because we so interpret it, it follows that the judgment is affirmed.

Plaintiffs' appeal—Affirmed.

Defendant's appeal—Affirmed.