JEAN H. WILLIAMS AND HAROLD S. ROSE AND WIFE, RITA
ROSE v. THE TOWN OF GRIFTON, A MUNICIPAL CORPORA-
TION, AND IN RE: ANNEXATION ORDINANCE ADOPTED BY
THE TOWN OF GRIFTON, A NORTH CAROLINA MUNICIPAL
CORPORATION, ON JULY 27, 1972 (72 CVS 1511)

— AND —

HOWARD L. PARKER AND KENNETH CARTER AND AL BREMER
v. THE TOWN OF GRIFTON, A MUNICIPAL CORPORATION, AND
IN RE: ANNEXATION ORDINANCE ADOPTED BY THE TOWN
OF GRIFTON, A NORTH CAROLINA MUNICIPAL CORPORA-
TION, ON JULY 27, 1972 (72 CVS 1512)

No. 733SC391

(Filed 26 September 1973)

1. **Appeal and Error § 45— abandonment: of exceptions**

Exceptions not brought forward and discussed in the brief are
deemed abandoned. Court of Appeals Rule 28.

2. **Constitutional Law § 8; Municipal Corporations § 2— annexation
statutes — no delegation of legislative power**

The statutes providing for the annexation of territory by munici-
palities having a population of less than 5,000 do not constitute an
unlawful delegation of legislative power in violation of Article VIII
of the N. C. Constitution. G.S. 160-453.1 through G.S. 160-453.12.

3. **Municipal Corporations § 2— annexation without consent — due process**

Residents of an annexed area were not deprived of their property
without due process of law by the fact that the area was annexed
and their property was made subject to city taxes without their con-
sent. Article I, Sec. 17 of the N. C. Constitution; Fourteenth Amend-
ment to the U. S. Constitution.

4. **Municipal Corporations § 2— reasons for annexation**

The stated reasons of a town board in annexing territory—(1)
essentially all of the town's desirable building sites are exhausted;
(2) the tax base is unable to provide the kind of services people need;
and (3) many interested people are unable to participate in town
government—do not violate the intent and spirit of G.S. 160-453.1;
furthermore, the statute does not make it incumbent upon the muni-
cipality to justify annexation other than to the extent of its ability
to serve the areas to be annexed.

5. **Municipal Corporations § 2— annexation — extension of police pro-
tection**

The evidence was sufficient to support the court's finding that
a town's report on the extension of police protection to an area to be
annexed showed that on the date of annexation police protection
would be provided to the annexed area on substantially the same

Williams v. Town of Grifton and Parker v. Town of Grifton

basis as such protection was previously provided within the remainder of the town, although no additional policemen would be provided.

6. **Municipal Corporations § 2— annexation — fire protection — water pressure.**

The evidence was sufficient to support the court's determination that proposed fire protection to one area to be annexed would be provided on substantially the same basis as such protection is provided within the remainder of the municipality, although the proposed water lines will not furnish as much water pressure as is recommended by the National Board of Fire Underwriters.

7. **Municipal Corporations § 2— character of area to be annexed — sufficiency of evidence to support findings**

The evidence was sufficient to support the court's findings that more than one-eighth of the external boundary of an area to be annexed coincides with the present municipal boundary, that 65% of the total number of lots and tracts in the area are used for residential purposes, and that 80% of the total of residential and undeveloped acreage consists of lots and tracts five acres or less in size.

8. **Municipal Corporations § 2— action to invalidate annexation — sufficiency of petition**

Petition to have an annexation ordinance declared invalid sufficiently set out petitioners' exceptions to the annexation procedure to comply with G.S. 160-453.6(b) and to survive a motion for judgment on the pleadings.

9. **Trial § 58— nonjury trial — admission of hearsay evidence — presumption that court considered only competent evidence**

In this proceeding to invalidate an annexation ordinance, the trial court did not commit prejudicial error in the admission of affidavits of petitioners' attorneys which contained hearsay evidence where the matter was heard by the court without a jury and there is no indication in the judgment that the court relied on any evidence contained in the affidavits.

10. **Municipal Corporations § 2— character of area to be annexed — unrecorded subdivision map**

Where a map of a subdivision of an undeveloped tract of land in an area to be annexed had not been recorded in the office of the Register of Deeds, the municipality properly considered the tract as farmland and not as separate lots in determining the character of the land to be annexed under G.S. 160-453.4, notwithstanding the map had been filed in the office of the county tax collector.

11. **Municipal Corporations § 2— annexation — fire protection — insufficiency of water pressure**

The evidence was sufficient to support the court's determination that the proposed fire protection for one area to be annexed was inadequate in that there will be a deficiency in water pressure as compared to the water pressure in most areas of the municipality prior to annexation.

APPEAL by plaintiff petitioners in each case and by the defendant respondent in each case from judgment of *Rouse, Judge,* Superior Court, entered 11 January 1973.

Petitioners, landowners in Pitt County, instituted this action seeking to declare a municipal bond issue void and to enjoin the sale of the bonds. They further sought to have the annexation ordinance adopted by the Board of Commissioners of the Town of Grifton declared unconstitutional.

The petitioners are two groups of landowners each group owning tracts of land sought to be annexed by the Town of Grifton. Prior to the proposed annexation, the residents of Grifton approved a sanitary sewer and water bond issue totaling $700,000.

Petitioners complained that the bond issue was invalid in that the Board and Mayor issued misleading statements in connection with the issue, viz: that the debt retirement would be borne principally by the residents of the proposed annexed areas on which tax values were high and that the purpose for the proposed annexation was to increase Grifton's tax base. Petitioners further complain that they had no legal right to oppose either annexation or the bond issue, since they were not residents of the Town of Grifton, and it was not until the adoption on 27 July 1972 of the annexation ordinance that their right to protest these proceedings arose.

Petitioners further complained that the Town Board in adopting the annexation ordinance failed to comply with G.S. 160-453.4 (re: the character of the area to be annexed) and G.S. 160-453.5 (re: procedure for a public hearing).

On 1 September 1972 a temporary restraining order was issued by Judge Rouse enjoining the Town from proceeding with the annexation until the court could review the ordinance pursuant to G.S. 160-453.6.

In the Superior Court review, the cases were consolidated and the Town of Grifton moved for judgment on the pleadings on the grounds that contentions of the petitioners had been adversely ruled upon by the Appellate Courts of North Carolina, and that petitioners failed to comply with G.S. 160-453.6 inasmuch as they did not specifically state their exceptions to the actions of the Town Board. The motion was allowed with

respect to the bond issue and denied with respect to the failure to set out exceptions with particularity. The annexation plan was remanded to the Town Board in order that it be brought into compliance with G.S. 160-453.4 relative to boundaries of the annexed areas and G.S. 160-453.3 relative to the fire plan.

The petitioners in each case and the defendant Town of Grifton appealed.

*Wallace, Langley, Barwick and Llewellyn, by F. E. Wallace, Jr., and Owens, Browning, and Haywood, by Mark W. Owens, Jr., for petitioners.*

*Gaylord and Singleton, by L. W. Gaylord, Jr., for respondent.*

MORRIS, Judge.

So many of the facts as are necessary for decision in this matter will be set out in the discussion of each appeal.

### *Petitioners' Appeal*

Petitioners reside in two subdivisions. The petitioners residing in Country Club Hills are 104 in number. We will hereafter refer to Country Club Hills as Tract No. 1. Petitioners residing in Forest Acres are 85 in number. We will hereafter refer to Forest Acres as Tract No. 2. It appears from the record that the subdivision Forest Acres is interchangeably referred to as Forest Hills and Forest Acres. We have used Forest Hills where used in the record. However, the two designations refer to the one subdivision, Forest Acres.

The Town of Grifton is a municipality with a population of less than 5,000 persons. On 9 May 1972, its governing board adopted a resolution to consider the annexation of Tract No. 1 and Tract No. 2. Notice of a public hearing was given as required by statute and 14 days prior to the hearing to be had on 14 June 1972, the Town filed in the Clerk's office a report setting forth its plans for extension of services to the two areas to be annexed. At the public hearing the report was explained and everyone present given an opportunity to be heard. On 27 July 1972, at a special meeting of the governing board, an ordinance was adopted annexing the areas and extending the town limits to include the areas. Effective date of the ordinance was 15 June 1973. Within 30 days of the adoption of the

ordinance petitioners filed the petitions seeking review of the action taken by the governing board, and attacking the legality of and authority of the Town of Grifton to issue the bonds.

Petitioners contend that G.S. 160-453.1 through and including G.S. 160-453.12 is unconstitutional for that the statute undertakes to delegate supreme legislative power to a muncipal governing body and deprive petitioners of their property without due process of law in that the annexation will result in imposition of taxes and assessments arising out of the issuance of bonds voted by the Town on 11 December 1971.

[1]. Nowhere in petitioners' brief do they refer to the exceptions or assignments of error to which their arguments refer. Rule 28, Rules of Practice in the Court of Appeals of North Carolina, specifically provides: that the brief of appellant "shall contain, properly numbered, the several grounds of exception and assignment of error with reference to the pages of the record, and the authorities relied on classified under each assignment; and if statutes are material, the same shall be cited by the book, chapter, and section. Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." It is obvious that appellants have made no effort to comply with this rule. In particular, we find no discussion at all with respect to assignments of error Nos. 3 and 4. These are, therefore, deemed abandoned. Because of the importance of the case, we do not dismiss the appeal of petitioners. We find it necessary, however, to discuss the questions involved in the same general order as petitioners have in their brief.

[2] The Supreme Court of North Carolina has held specifically that the legislature may without violating the State or Federal Constitution delegate to a municipality the authority to implement a plan of annexation. *In Re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961). Although the statutes involved in this case were G.S. 160-453.13, et seq., (dealing with municipalities of population of 5,000 or more) there is little doubt that the court would uphold G.S. 160-453.1 through 160-453.12 (municipalities of population of less than 5,000) on the same basis. In that case, petitioners contended—as do petitioner appellants in the case under consideration—that the statute is in violation of Article VIII of the North Carolina Constitution, citing for that proposition *Coastal Highway v.*

*Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310 (1953), as do petitioners in the case *sub judice.*

The Supreme Court rejected the argument on the grounds that there is a distinction between " 'delegation of the power to make a law, which necessarily includes a discretion as to what it shall be, *and the conferring of authority or discretion as to its execution.* The first may not be done, whereas the latter, *if adequate guiding standards are laid down, is permissible under certain circumstances.* 11 Am. Jur., Constitutional Law, Sec. 234. See also *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 22 S.E. 2d 896.' (Emphasis added.)" *In Re Annexation Ordinances, supra,* at 645.

The only discretion given to the municipality under G.S. 160-453.13, et seq., according to the Supreme Court is the "permissive or discretionary right to use this new method of annexation provided such boards conform to the procedure and meet the requirements set out in the Act as a condition precedent to the right to annex." *Id.* at 647.

A careful reading of the annexation statute as a whole leads to the inescapable conclusion that the guidelines established by G.S. 160-453.1 through 160-453.12 are as stringent as those in G.S. 160-453.13, et seq., and the discretion conferred upon the municipalities of population less than 5,000 is no greater than that conferred upon municipalities of population of 5,000 or greater. Therefore, the contention that the annexation statute is unconstitutional is untenable.

[3] In *In Re Annexation Ordinances, supra,* the Supreme Court of North Carolina rejected a contention of an appellant identical to the contention in the present case, viz, that appellant was deprived of his property without due process of law as required by the 14th Amendment of the Constitution of the United States and Article I, Section 17 of the Constitution of North Carolina.

". . . [W]here additional territory is annexed in accordance with the law, the fact that the property of the residents in such area will thereby become subject to city taxes levied in the future, does not constitute a violation of the due process clause of the State and Federal Constitutions." *Id.* at 651-652.

In accord is *Matthews v. Blowing Rock,* 207 N.C. 450, 177 S.E. 429 (1934), although this case was decided under a prior

Williams v. Town of Grifton and Parker v. Town of Grifton

annexation statute. The case holds that an act of annexation is valid when it annexes a territory without the consent of its inhabitants and subjects their property to taxes to pay for a large, unprovided-for indebtedness.

Defendant appellant cites in support of its position *Eakley v. Raleigh,* 252 N.C. 683, 114 S.E. 2d 777 (1960). This case is not directly on point, however, for the precise holding is that the issuance of water bonds is not invalidated by the fact that the City Council at the time of the election contemplated expenditure of the bond monies in territories to be annexed. Neither *Eakley,* nor its companion case—*Upchurch v. Raleigh,* 252 N.C. 676, 114 S.E. 2d 772 (1960) — addresses the issue of annexation as a taking of property without due process of law. The validity of the bond issue—although petitioner appellant purports to appeal on the basis thereof—is not put in issue by the arguments contained in the briefs.

[4] Petitioners further argue that the Town failed to comply with the spirit and intent of G.S. 160-453.1 by arbitrarily selecting Tracts Nos. 1 and 2 for annexation and that the court erred in failing so to find. G.S. 160-453.1 provides:

> *"Declaration of policy.*—It is hereby declared as a matter of State policy:
>
>> (1) That sound urban development is essential to the continued economic development of North Carolina;
>>
>> (2) That municipalities are created to provide the governmental services essential for sound urban development and for the protection of health, safety and welfare in areas being intensively used for residential, commercial, industrial, institutional and government purposes or in areas undergoing such development;
>>
>> (3) That municipal boundaries should be extended, in accordance with legislative standards applicable throughout the State, to include such areas and to provide the high quality of governmental services needed therein for the public health, safety and welfare; and
>>
>> (4) That the urban development in and around municipalities having a population of less than 5,000 persons tends to be concentrated close to the municipal boundary rather than being scattered and dispersed as in the

vicinity of larger municipalities, so that the legislative standards governing annexation by smaller municipalities can be simpler than those for larger municipalities and still attain the objectives set forth in this section;

(5) That areas annexed to municipalities in accordance with such uniform legislative standards should receive the services provided by the annexing municipality as soon as possible following annexation."

Petitioners contend that the spirit of the statute has been violated in that the Town "has attempted to impose upon these petitioners an arbitrary annexation for the purpose of building a tax base against the wishes of the residents of the area . . ."

In *Matthews v. Blowing Rock, supra,* the Court, quoting from *Lutterloth v. Fayetteville,* 149 N.C. 65, 62 S.E. 758 (1908), said:

"It has therefore been held that an act of annexation is valid which authorized the annexation of territory, without the consent of its inhabitants, to a municipal corporation, having a large unprovided-for indebtedness, for the payment of which the property included within the territory annexed became subject to taxation." *Id.* at 452.

Petitioners cite three avowed objectives stated by the Town's governing board: "(1) Essentially all of the town's desirable building sites are exhausted. (2) The tax base is unable to provide the kind of services people need. (3) Many interested people are unable to participate in town government," as not being sufficient to qualify the annexation under the statute. Petitioners cite *Lithium Corp. v. Bessemer City,* 261 N.C. 532, 135 S.E. 2d 574 (1964). In that case proceedings of Bessemer City, a municipality having a population of less than 5,000, to annex an area of 69.62 acres contiguous to the city's boundary, was before the Court. Justice Moore said that the statute under consideration was the result of a study and recommendation made by the Municipal Government Study Commission which was established in accordance with Joint Resolution 51 of the 1957 General Assembly. That Commission made two reports, one dated 1 November 1958, and the other

26 February 1959. Justice Moore set out in substance, except where quoted verbatim, some of the pertinent comments and recommendations. We quote from his opinion, adopting his numbering and paragraphing:

> "(2). The factors important in deciding what lands should be annexed are: (a) the actual distribution of developed and vacant land in an area, (b) the extent to which the area needs municipal services, (c) the extent to which the owners of developed property in the area desire municipal services, (d) the availability inside the corporate limits of land suitable or desirable for residential, commercial and industrial development, (e) the extent to which municipal services can be provided, and (f) the impact of services and taxation upon lands being annexed. Report 2, pp. 7, 8.

> (3). '. . . (T)he General Assembly should not delegate unlimited power to the governing boards. Exercise of discretion to extend corporate boundaries must and should be subject to general standards or limitations . . . . And we think the primary standards should be . . . that the land to be annexed is either developed for urban purposes or is reasonably expected to be so developed in the near future . . .' Report 2, p. 9.

> (4). 'We do not believe that a precise municipal boundary can be fixed by reference to specific factual standards. Somewhere in the process there must be the exercise of judgment by some board or agency. Therefore, whether the decision is made by a city council or a state administrative board, the most practical method of reviewing the administrative decision is to provide judicial review. . . . And the scope of review must necessarily be whether the agency making the decision made a reasonable decision in accord with the statutory standards. This, we believe, is the best protection for the individual property owners.' Report 2, p. 10." *Id.* at 537.

We do not perceive that the three avowed objectives of the governing board are violative of the intent and spirit of the statute. Indeed G.S. 160-453.3 entitled "Prerequisites to annexation; ability to serve; report and plans" does not make it incumbent upon the municipality to justify annexation other than to the extent of its ability to serve the areas to be annexed.

Petitioners take the position that the Town has failed to meet the prerequisites of G.S. 160-453.3, and that the court erred in failing to find this as a fact.

The petitioners first object to the court's finding as a fact that the report provided for in G.S. 160-453.5 set out plans which "provided for extending police protection, fire protection, and street maintenance services to the areas to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation; . . ." and its conclusion of law that the Town had fully complied with the provisions of G.S. 160-453.3 (with one exception to which the Town excepted).

[5] The report stated that the present police force consisted of five men operating two radio equipped patrol cars. At the time of the report approximately 12 miles of street were patrolled on a 24-hour basis by the officers on foot and with patrol cars. The annexation would add only 4.6 miles of new streets which are largely residential in character. "The present police force will be able to patrol and provide police protection in the two proposed annexation areas at the same level now provided inside the Town." The additional cost would be minimal, since patrol activity is necessarily most intensely provided in the commercial areas. The increase in operating expense would not be directly proportional to the additional street mileage in the annexation areas. The report estimated the increase at $740 which would be financed from additional ad valorem tax revenue. The record contains evidence supporting the plans set out in the report and no evidence that the service would not be adequate. The evidence was sufficient, in our opinion, to support the conclusion as to the police protection requirement of G.S. 160-453.3.

We shall subsequently discuss fire protection when we discuss extension of water lines.

Petitioners do not seriously protest the adequacy of the plans for garbage collection and street maintenance. They presented no evidence in contradiction, but simply state in their brief that "there was budgeted a very nominal increase of costs of $2,600.00, which obviously cannot serve the area adequately or efficiently."

The petitioners except to the court's finding of fact with respect to financing. In its findings of fact re G.S. 160-453.5, the court's finding No. 9 was as follows:.

> "9. The Town of Grifton by election has authorized $575,000 of sanitary sewer bonds and $125,000 in water bonds. The Farmers Home Administration has approved a cost-free grant to the Town of Grifton in the amount of $195,000 for sewer service improvement and installation in the areas to be annexed and a cost-free grant in the amount of $108,000 for water service improvement and installation in the areas to be annexed. Additionally, pursuant to the provisions of Public Law 660, additional funds in the amount of $143,000 will be made available to the Town of Grifton for use in development, contingencies, land rights-of-way purchases, engineering services, legal services, and interest in connection with the water and sewer services hereinabove referred to. The aforesaid sums are adequate to make the proposed improvements."

Petitioners except to that portion with respect to the additional funds in the amount of $143,000. There is competent evidence in the record to support the court's finding. Additionally there was competent evidence from the engineer, without objection, that there were ample funds for the project.

[6] The court concluded that the Town had not complied with the provisions of G.S. 160-453.3 with respect to fire protection for Tract No. 2. This is, however, the subject of one of respondent's assignments of error. As to water and fire protection for Tract No. 1, there was evidence that the plan for water distribution to the area called for an eight-inch line, that the flow would not furnish as much water as is recommended by the Fire Underwriters (750 gallons per minute) but it could be expected to furnish from 750 to 600 gallons per minute, and would furnish as much water in most instances as was then being furnished the population of the Town, that at the present 20% of the population was being served by hydrants furnishing less than 400 gallons. G.S. 160-453.3 (3) (a) requires that the plans shall "provide for extending police protection, fire protection, garbage collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to

annexation." We are of the opinion that the evidence is sufficient to support the court's finding of compliance.

[7] Petitioners further urge that the Town failed to meet the test of character of the area to be annexed as required by G.S. 160-453.4 which provides:

> "*Character of area to be annexed.*— (a) A municipal governing board may extend the municipal corporate limits to include any area which meets the general standards of subsection (b), and which meets the requirements of subsection (c).
>
> (b) The total area to be annexed must meet the following standards:
>
>> (1) It must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun.
>>
>> (2) At least one eighth of the aggregate external boundaries of the area must coincide with the municipal boundary.
>>
>> (3) No part of the area shall be included within the boundary of another incorporated municipality.
>
> (c) The area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.
>
> (d) In fixing new municipal boundaries, a municipal governing board shall, wherever practical, use natural topographic features such as ridge lines and streams and creeks as boundaries, and if a street is used as a boundary, include within the municipality developed land on both sides of the street."

We will here discuss this requirement only as it pertains to Tract No. 1. Compliance as to Tract No. 2 will be addressed in our discussion of respondent's appeal. As to Tract No. 1, the report filed shows that the area to be annexed meets the requirements of G.S. 160-453.4.

The court made the following findings of fact with respect to Tract No. 1:

"13. Tract or Area No. 1 is adjacent and contiguous as defined by GS 160-453.9 (1) as of the 9th day of May, 1972, the date on which this annexation proceeding was begun and as shown on the map included in annexation plan and marked Exhibit A. The aggregate external boundary line of the area to be annexed (Tract No. 1—Country Club Area) is 17,488 feet of which 4,166 feet coincide with the present Town boundary as shown on the map marked Exhibit A. Therefore, at least one-eighth (1/8) of said external boundary coincides with the Town boundary.

No part of the area to be annexed (Tract No. 1—Country Club Area) is included within the boundary of another incorporated municipality.

The area to be annexed (Tract or Area No. 1) is developed for urban purposes in that 65 percent of the total number of lots and tracts in said area are used for residential and commercial purposes, and 80 percent of the total of residential and undeveloped acreage (exclusive of streets) consists of lots and tracts five acres or less in size, all of which is demonstrated as follows:

(a)  Total no. of lots and tracts _____   164

No. of lots and tracts used for

Residential _____   106

Commercial _____     1

Total _____   107

Percent in urban use _____   65%

(b)  Total residential and undeveloped
      acreage _____ 118.9

Less acreage included within streets ___.   18.0

Williams v. Town of Grifton and Parker v. Town of Grifton

Net acreage _____ 100.9

Acreage in lots and tracts five (5)
    acres or less _____ 80.4

Percentage of total residential and un-
    developed acreage in lots and
    tracts five (5) acres or less _____ 80%"

Our own calculations show that more than one-eighth of the external boundary of the area to be annexed coincides with the present Town boundary. It is clear from the exhibits, and there is no contradiction in the evidence that no part of the area to be annexed is included within the boundary of another municipal corporation. Petitioners challenge the court's finding that 65% of the total number of lots and tracts in said area are used for residential purposes; and 80% of the total of residential and undeveloped acreage (exclusive of streets) consists of lots and tracts five acres or less in size. Petitioners argue that the Town should have included all of the subdivision, as maps were recorded in the office of the Register of Deeds. There is no evidence at all in the record with respect to these exhibits. We know not whether any development had been started or whether any streets had even been opened. The only evidence in the record supports the court's findings. We do not consider petitioners' argument in their brief as evidence before the court.

For the reasons set out herein, on petitioners' appeal, the judgment of the court is affirmed.

### Respondent's Appeal

Respondent notes six assignments of error with respect to Tract No. 1 and 25 assignments of error with respect to Tract No. 2. Assignments of error Nos. 2 and 3 (Tract No. 1) and 9 and 10 (Tract No. 2) are not brought forward and argued in its brief. These are deemed abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

[8] Respondent's first assignment of error with respect to both tracts is directed to the failure of the court to sustain its motion for judgment on the pleadings based on its contention that the petitioners did not explicitly set out petitioners' exceptions to the annexation procedure as required by G.S. 160-453.6(b). We agree with respondent that the exceptions stated in the petition are not as explicit as those in the petition before us in

*Adams-Millis Corp. v. Kernersville,* 6 N.C. App. 78, 169 S.E. 2d 496 (1969). Nevertheless, we do not think the petitions are sufficiently lacking in compliance with the statute to require the granting of a motion for judgment on the pleadings. This assignment of error is, therefore, overruled.

[9] By assignments of error Nos. 5 (Tract No. 1) and 12 (Tract No. 2), respondent takes exception to the court's allowing into evidence the affidavit of F. E. Wallace, Jr., and the affidavit of Mark W. Owens, Jr. At the close of the evidence at trial, it was stipulated and agreed that additional evidence could be tendered to the court by any party at any time prior to the ruling and opinion of Judge Rouse and that the Judge would rule upon any tendered evidence as received by him. On 11 December petitioners tendered to the court an affidavit of F. E. Wallace, Jr., and an affidavit of Mark W. Owens, Jr., both counsel for petitioners. Respondent objects to the receiving of the affidavits of the court, not because they contained evidence given by counsel for the petitioners, but because the affidavits contained hearsay testimony. Unquestionably, the greater portion of both affidavits is purely hearsay evidence. However, the matter was heard by the court sitting without a jury, and we assume that the court considered only competent evidence. At any rate, we find no indication in the court's judgment that he relied on any evidence contained in either affidavit. These assignments of error are overruled.

[10] Since respondent's assignments of error Nos. 2, 3, 4, 5, 6, 7, 8, 11, 13, 14, 15, 16 and 18 (with respect to Tract No. 2) all relate to the Sally Johnson property, we will discuss them together. It appears from the record and from petitioners' Exhibits Nos. 7 and 8 that the Town had, in determining the area to be annexed, considered property of Mrs. Johnson as farm land and not lots. The portion included in the proposed area to be annexed is a 12-acre undeveloped tract. The balance of the land lies outside the boundaries of the area to be annexed. The court allowed in evidence, over respondent's objection, testimony that the land had been subdivided into lots some nine years prior to the hearing, that a map had been made of the subdivision, and two lots (outside the area to be annexed) conveyed with reference to the map. It was stipulated that the map had never been recorded in the office of

Williams v. Town of Grifton and Parker v. Town of Grifton

the Register of Deeds. It had, however, been filed in the office of the County Tax Collector. In his order, Judge Rouse found that the lots shown on the Johnson map were not considered "in the tally shown in Paragraph 4 of the annexation plan, as the same relate to Tract No. 2 or the Forest Hills Area, as separate lots; they were counted as one tract of land more than five (5) acres in size. Had each lot been considered separately, the summary would have been as follows:

Total number of lots and tracts _____112
Number of lots used for residential _____ 59
Percent in urban use _____ 52%

No evidence was offered on specifics here and this finding is based on the Court's examination of the exhibits offered into evidence." The court further found that "less than sixty (60) percent of the total number of lots and tracts in the area of Tract No. 2 at the time of annexation are used for residential, commercial, industrial, institutional, or governmental purposes." The court concluded as to this property as follows:

"5. The word 'lot' is to be taken in its usual, well defined sense when applied to subdivided real estate. It means the fractional part of a block, commonly known as a lot, limited by fixed boundaries on a recorded plat. When a tract is mapped designating fractional parts as lots and the map is filed in the County Tax Office, and lots are conveyed with reference to the map, nothing else appearing, then the fractional parts thereof become 'lots' within the meaning of GS 160-453.4(c).

6. The 'lots' of Mrs. Sally Rouse Johnson as shown on petitioners' Exhibits 7 and 8 and within the area to be annexed as a part of Tract No. 2 should have been included by the Town of Grifton Board of Commissioners in determining whether the requirements of GS 160-453.4(c) were met, in order to provide reasonable accurate results.

7. The requirements of GS 160-453.4 have not been met as the same relate to Tract No. 2 (Forest Hills Area) and the Town of Grifton may not extend its boundaries to include the area of this tract as described in the annexation ordinance."

In this we think the court erred. The map referred to had not been recorded in the office of the Register of Deeds. We are of the opinion that, in order for the map to constitute notice to the Town of a proposed subdivision, recordation in the office of the Register of Deeds is required. Unquestionably, this office is the proper place for such recordation. See G.S. 47-30 and G.S. 47-30.1. There is no evidence in this record that the Town had any notice whatever of this proposed subdivision map. We are inclined to apply the same principle as has been applied for many years to conveyances of real property; to wit, ordinarily a person may rely on the public records and no notice, regardless of how full and formal, will take the place of registration in the proper public office. See *Dula v. Parsons*, 243 N.C. 32, 89 S.E. 2d 797 (1955), and *McClure v. Crow*, 196 N.C. 657, 146 S.E. 713 (1929), and cases there cited. There is nothing in this record to indicate that the office of the Tax Collector is the acceptable place for "filing" maps or that "filing" maps of subdivisions in the Tax Collector's office is, by custom and practice, considered notice in Pitt County. There was evidence, which we consider incompetent by virtue of our position on this question, that two conveyances had been made with reference to the map. The deeds, which conveyed lots outside the proposed area for annexation, were not introduced in evidence nor was there any evidence that the deeds referred to the location of the map. It could well have been in Mrs. Johnson's desk drawer at her home. We cannot say that the Town had sufficient notice of this proposed subdivision to include it as lots in its tally to determine whether the proposed area qualified under the statute. We, therefore, sustain these assignments of error.

[11] We come now to respondent's assignments of error Nos. 17, 19 and 23 with respect to extension of fire protection to Tract No. 2. The court found as a fact that "The desired pressure is seven hundred and fifty gallons per minute. The National Board of Fire Underwriters recommends a pressure of seven hundred and fifty gallons per minute. Thus, for fire fighting purposes, the proposed plan will not furnish as much water as is recommended by the National Board of Fire Underwriters. If the proposed water lines were looped, then it would provide the pressure recommended by the National Board of Fire Underwriters."

Among the court's conclusions of law were these:

"2. *Except as hereinafter stated with reference to fire protection for Tract No. 2 (Forest Hills Area)*, the Town of Grifton has fully complied with the provisions of GS 160-453.3." (Emphasis supplied.)

and

"8. That as to the Forest Hills Area (Tract No. 2), the plan for annexation does not provide fire protection to the Forest Hills Area (Tract No. 2) on substantially the same basis and in the same manner as such services are provided within the rest of the Town of Grifton prior to annexation. Under the proposed plan there will be a deficiency in water pressure and thereby fire protection as compared to most areas of the Town of Grifton prior to annexation in violation of the provisions of GS 160-453.3."

G.S. 160-453.3, in pertinent part, provides that the plan of the municipality for extending services to the area to be annexed must "provide for extending police protection, fire protection, garbage collection and street maintenance services to the area to be annexed on the date of annexation *on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.* If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such times as waterlines are made available in such area under existing municipal policies for the extension of waterlines." (Emphasis supplied.)

There was testimony that an engineer had tested six hydrants in the Town of Grifton. The first hydrant tested put out a flow of 810 gallons per minute; the next, 610 gallons per minute; the next, 790 gallons per minute; the next, 820 gallons per minute. The lowest of the tests was 80 gallons which was the "one on the two inch line". The engineer further testified: "All the others tested were on six inch lines and the lowest of these was 610 gallons per minute. In my opinion 80% of the Town of Grifton would be affected by pressures of over 600 pounds per minute." The evidence from the same engineer was that "it would be around 400 gallons per minute in the Forest Acres area." While we think there was also com-

petent evidence upon which the court could have found otherwise, it is obvious that there was competent evidence, entered without objection, that the plan for annexation does not provide for fire protection "on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." We, therefore, are of the opinion that the court did not err in the challenged findings of fact and conclusions of law with respect to the fire protection to Tract No. 2.

The matter will have to be remanded to the Board of Commissioners for the Town of Grifton for amendment of the plans for providing fire protection service to the end that the provisions of G.S. 160-453.3 are met with respect to Tract No. 2.

Respondent urges that the entire matter need not be remanded since, as to Tract No. 1, there was no error. We do not agree. From the record, it is obvious that all grants committed are for the entire project and not separated as to Tract No. 1 and Tract No. 2. For that reason we remand the matter in its entirety.

The result, then, is this:

Petitioners' appeal — affirmed.

Respondent's appeal — affirmed in part and reversed in part.

Remanded in its entirety.

Judges CAMPBELL and PARKER concur.