THOMAS L. THRASH AND LORA R. THRASH v. CITY OF ASHEVILLE, A MUNICIPAL CORPORATION, W. LOUIS BISSETTE, MAYOR OF THE CITY OF ASHEVILLE, MARY LLOYD FRANK, VICE-MAYOR OF THE CITY OF ASHEVILLE, WALTER BOLAND, WILHELMINA BRATTON, GEORGE TISDALE, NORMA PRICE AND KENNETH MICHALOVE, CITY COUNCILPERSONS OF THE CITY OF ASHEVILLE

―――――――

BASF CORPORATION v. CITY OF ASHEVILLE

―――――――

JOHN F. TYNDALL AND WIFE, HELEN TYNDALL, WILLARD HINTZ AND WIFE, ELIZABETH HINTZ, ALVA L. WALLIS, JR., AND WIFE, KANNIE WALLIS, BEULAH WILSON AND INA N. FISHER v. CITY OF ASHEVILLE

No. 455A89

(Filed 26 July 1990)

**Municipal Corporations § 2.2 (NCI3d)— annexation—percentage of land subdivided—erroneous classification—failure of ordinance to meet statutory requisites for annexation**

Respondent erroneously included an 18.25-acre tract in the calculation of developed property under N.C.G.S. § 160A-48, and respondent's ordinance therefore failed to comply with statutory requisites for annexation, where tax records indicated that the tract in question was subdivided into approximately one-acre lots, and respondent relied on this information in making its calculations, while an aerial photograph revealed that no lots or streets had been laid out, thus indicating that the tax records were not a reliable basis upon which to make

THRASH v. CITY OF ASHEVILLE

[327 N.C. 251 (1990)]

estimates for the purpose of determining subdivision; when the 18.25-acre tract was subtracted from the "subdivision" acreage figure, the resulting figure was 59.643% developed for urban purposes, which was less than the 60% required by statute; and the difference between that figure and respondent's original figure of 64.9% exceeded the statutorily permissible 5% margin of error. N.C.G.S. § 160A-54(3).

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivision § 72.**

APPEAL by petitioners pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals reported at 95 N.C. App. 457, 383 S.E.2d 657 (1989), affirming a judgment entered for respondent on 20 May 1988 by *Sitton, J.*, at the 18 April 1988 Civil Term of Superior Court, BUNCOMBE County. Heard in the Supreme Court 16 May 1990.

*Adams, Hendon, Carson, Crow & Saenger, P.A., by S. Jerome Crow and Martin K. Reidinger, for petitioner-appellants Thrash.*

*Moore & Van Allen, by Daniel G. Clodfelter and Douglas R. Ghidina, for petitioner-appellant BASF Corporation.*

*Herbert L. Hyde for petitioner-appellants Tyndall et al.*

*Nesbitt & Slawter, by William F. Slawter, and Sara Patterson Brison, Assistant City Attorney, for respondent-appellee City of Asheville.*

*North Carolina League Of Municipalities, by S. Ellis Hankins and Andre K. Flowers, amicus curiae.*

WHICHARD, Justice.

This consolidated civil action was brought pursuant to N.C.G.S. § 160A-50 for judicial review of Ordinance No. 1649, passed by the City of Asheville to annex territory west of the city into its corporate limits. Upon review in a nonjury trial the ordinance was upheld, and the order of the trial court was affirmed by the Court of Appeals. Although two issues were raised by the dissent in the Court of Appeals, one is dispositive and obviates discussion of the other: because an 18.25-acre tract was erroneously included in the calculation of developed property under N.C.G.S. § 160A-48, the ordinance failed to comply with statutory requisites for annexation.

## THRASH v. CITY OF ASHEVILLE

[327 N.C. 251 (1990)]

On 9 June 1987 the City of Asheville passed a resolution of intent to consider annexation of certain properties west of its boundaries. The statute governing annexation by this method provides:

(a) A municipal governing board may extend the municipal corporate limits to include any area

(1) Which meets the general standards of subsection (b), and

(2) Every part of which meets the requirements of either subsection (c) or subsection (d).

(b) The total area to be annexed must meet the following standards:

(1) It must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun.

(2) At least one eighth of the aggregate external boundaries of the area must coincide with the municipal boundary.

(3) No part of the area shall be included within the boundary of another incorporated municipality.

(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

(1) Has a total resident population equal to at least two persons for each acre of land included within its boundaries; or

(2) Has a total resident population equal to at least one person for each acre of land included within its boundaries, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage consists of lots and tracts five acres or less in size and such that at least sixty-five percent (65%) of the total number of lots and tracts are one acre or less in size; or

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the

time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

N.C.G.S. § 160A-48 (1987). The three alternative tests posited under subsection (c) express the legislative intent that the character of the property to be annexed exemplify a certain minimum, actual urbanization through population density, through the division of property, through actual, urban use, or through a combination of these characteristics.

Part of the territory that respondent Asheville sought to annex was the 18.25-acre Owenby property, which was characterized for annexation purposes as "consist[ing] of lots and tracts five acres or less in size." N.C.G.S. § 160A-48(c)(3) (1987). The trial court found that a subdivision plat for this property had been recorded in the Buncombe County Register of Deeds Office in 1976 and that at the time of annexation this property was identified on Buncombe County tax maps and records as eighteen separate lots. Although none of the eighteen lots had been sold since the recording of the plat, and although, after adoption of the annexation ordinance, the owner of the Owenby property had requested that the Tax Office combine the eighteen lots on record into one, the trial court observed that the subdivision plat remained of record in the Buncombe County Register of Deeds Office. In addition, the trial court found that conveyance to the owner of the Owenby property had been subject to the restriction that the property be used for residential purposes with houses similar to those in an adjoining subdivision. The trial court concluded from these facts that the method used by the City had been calculated to provide "reasonably accurate results" pursuant to N.C.G.S. § 160A-54.

In affirming the trial court, the Court of Appeals noted that under N.C.G.S. § 160A-42(2), a recorded plat "should be considered" a reasonably reliable source for purposes of showing subdivision. *Thrash v. City of Asheville*, 95 N.C. App. 457, 464, 383 S.E.2d 657, 661 (1989). The majority did not consider significant the fact that the property had never actually been developed. In *Williams v. Town of Grifton*, 19 N.C. App. 462, 199 S.E.2d 288 (1973), undeveloped property registered as subdivided in the Tax Office but not in the Register of Deeds Office was held to have been properly considered one tract because the city did not have proper record notice of subdivision. The Court of Appeals deduced from

*Williams* that recordation of a subdivision plat with the Register of Deeds supported the City's assessment of the Owenby property as a subdivided tract. Like the trial court, the Court of Appeals was impressed by the fact that conveyance of the Owenby tract had been subject to a restrictive covenant requiring that development be similar to that of an adjacent subdivision, indicating a lack of intent on the part of the grantor to withdraw the offer of dedication of streets indicated on the plat. *Id.* at 464-65, 383 S.E.2d at 661; *cf. Rowe v. Durham*, 235 N.C. 158, 69 S.E.2d 171 (1952).

Judge Greene, dissenting, opined that the classification of the Owenby property as "subdivision" did not reflect the factual characteristics of the property. He noted that the conveyance of the Owenby property in 1984 had described the property by metes and bounds, not by reference to a recorded subdivision plat. The property "had never been surveyed and divided on the ground, no lots had been sold, and no roads had been constructed and opened for traffic." *Thrash v. City of Asheville*, 95 N.C. App. at 476, 383 S.E.2d at 668 (Greene, J., dissenting). Moreover, the Buncombe County Tax Office had exceeded statutory authorization in classifying the Owenby property as "subdivision," for pertinent provisions then in effect restricted such classification to tracts that have "been divided into lots that are located on streets laid out and open for travel and that have been sold or offered for sale as lots." N.C.G.S. § 105-287(b)(4) (1985). *See also* N.C.G.S. § 105-287(d) (1989) ("A tract is considered subdivided into lots when the lots are located on streets laid out and open for travel and the lots have been sold or offered for sale as lots since the last appraisal of the property."). *See Thrash v. City of Asheville*, 95 N.C. App. at 476, 383 S.E.2d at 668. Petitioners exercised their right to appeal to this Court based on the dissenting opinion. N.C.G.S. § 7A-30(2) (1989).

Where an appeal is taken from the adoption of an annexation ordinance and the proceedings show *prima facie* that there has been substantial compliance with the statute, the burden is upon the party attacking the annexation to show, by competent evidence, failure on the part of the municipality to comply with the statutory requirements. *Dale v. Morgantown*, 270 N.C. 567, 574, 155 S.E.2d 136, 143 (1967). "Substantial compliance means compliance with the essential requirements of the Act." *Huntley v. Potter*, 255 N.C. 619, 627, 122 S.E.2d 681, 686 (1961).

Municipalities seeking to annex new areas into their corporate limits are directed by N.C.G.S. § 160A-54 to "use methods calculated to provide reasonably accurate results" in determining the degree of land subdivision for purposes of meeting the requirements of N.C.G.S. § 160A-48. In reviewing whether the requisites of N.C.G.S. § 160A-48 have been met, the court must accept the estimate as to degree of land subdivision by the municipality

> if the estimates are based on an actual survey, or on county tax maps or records, or on aerial photographs, or on some other reasonably reliable source, unless the petitioners on appeal show that such estimates are in error in the amount of five percent (5%) or more.

N.C.G.S. § 160A-54(3) (1987). This provision governing methods for estimating the degree of subdivision authorizes alternative methods for appraising the character of property being considered for annexation, and in so doing it reflects the general statutory intent "to provide municipalities with a flexible planning tool." *Lowe v. Town of Mebane*, 76 N.C. App. 239, 243, 332 S.E.2d 739, 742 (1985). However, the use of such methods is conditioned upon their being "reasonably reliable." N.C.G.S. § 160A-54(3) (1987). "The reasonableness of the method chosen is to be determined in light of the particular circumstances presented by the annexation proceedings in question." *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 26-27, 265 S.E.2d 123, 127 (1980). If on appeal petitioners show that the estimates are in error because, for example, they were based upon a method that in actuality proved to be inaccurate, the fact that the municipality relied for its calculations on a method presumed in the statute to be "reasonably reliable" will not salvage an erroneous result. The critical question is not whether the city followed one method or another in calculating the number of lots, but whether "the method utilized is calculated to provide reasonably accurate results." *Id.* at 27, 265 S.E.2d at 127. If the results prove to be inaccurate beyond the statutorily allowable five percent margin of error, the statutory presumption as to reliability is rebutted.

The annexation statutes clearly take into account the difficulty of ascertaining the character of all acreage intended for annexation. Not only do they permit a margin of error of five percent, but they provide a check in the form of a challenge to the annexation by petition. The objective of the annexation statutes is to provide "legislative standards applicable throughout the State" to serve

as guidelines for "sound urban development." N.C.G.S. § 160A-45 (1987). "Sound urban development" does not mean a territory may be annexed whenever some documentation of record supports its assessment as urban; it means a territory may be annexed when its character reflects some actual, minimum urbanization. This actual, minimum urbanization is an essential requirement of the annexation act. *See* N.C.G.S. § 160A-48(c) (1987); *Huntley v. Potter*, 255 N.C. at 627, 122 S.E.2d at 686.

The city planner for respondent Asheville testified that she used aerial photographs and a tax map for the Owenby property in assessing whether that property was subdivided. Although she perceived that the tax map showed a road through the property but the aerial photograph did not and that, generally speaking, nothing in the aerial photograph confirmed what the tax map represented with regard to development, she relied upon the tax map because "[i]t was the better tool to use in qualifying the area for annexation." Evidence before the trial court included the same aerial photographs indicating that neither lots nor streets had been laid out on the Owenby property. The owner testified that the land had remained vacant and unimproved since she had acquired it and confirmed that there was no road on the property. An employee of the Buncombe County Land Records Office, whose duties included maintaining the Buncombe County tax records, testified that the Owenby property had been mapped as an eighteen-parcel piece, although, according to mapping standards adopted in 1983, it should have been mapped as a single acreage, without lot lines. This remapping and a concomitant consolidation of tax bills were effected at the request of the Owenby property owner shortly after the passage of the annexation ordinance.

In its recalculation of acreage classified by respondent Asheville under N.C.G.S. § 160A-48(c)(3), the trial court determined that 434.66 acres of the total 698.17 fit the classification of lots or tracts less than five acres in size. The resulting percentage — 62.257% — indicated a discrepancy of less than five percent from the 64.9% figure derived from the city's uncorrected calculations. Because of the minimal discrepancy, the trial court stated it was required to accept the city's estimates as to the amount of acreage subject to annexation that consisted of lots or tracts five acres or less in size. *See* N.C.G.S. § 160A-54 (1987).

THRASH v. CITY OF ASHEVILLE

[327 N.C. 251 (1990)]

Findings of fact made below are binding on the appellate court if supported by the evidence, even when there may be evidence to the contrary. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980). In this case, however, the evidence does not support the trial court's findings of fact with regard to the Owenby property: when the accuracy of record evidence proffered by the city to meet requisites for annexation is belied by evidence before the reviewing court of the actual condition of the property, such records are not a "reasonably reliable" basis upon which estimates may be made for purposes of determining subdivision. The reliability of tax records is particularly dubious where the property in question meets neither the definition of "subdivision" set out in the tax statutes nor standards for characterizing subdivisions for tax purposes adopted by the Buncombe County Land Records Office. It was therefore error to include the Owenby property among the acreage counted as subdivided and used for residential purposes. *See* N.C.G.S. § 160A-48(c)(3) (1987).

When the 18.25 acres of the Owenby property is subtracted from the "subdivision" acreage figure, the resulting ratio is 59.643%, which is less than the minimum requisite ratio of 60%. Moreover, the difference between that figure and respondent Asheville's original figure of 64.9% exceeds the statutorily permissible five percent margin of error. Because petitioners succeeded in their burden of showing by competent evidence that respondent Asheville thus failed to comply with the statutory requirements for annexation, the trial court erred in affirming Ordinance No. 1649, and the decision of the Court of Appeals affirming the trial court is accordingly reversed.

Reversed.