ADAMS-MILLIS CORPORATION v. TOWN OF KERNERSVILLE,
NORTH CAROLINA

No. 6921SC357

(Filed 17 September 1969)

**1. Municipal Corporations § 2— petition to review annexation ordinance — failure to allege injury**

Petition to review annexation ordinance under G.S. 160-453.6 is not fatally defective in failing to allege specifically that petitioner will suffer material injury by alleged failure of municipality to comply with statutory procedures, particularly where the petition contains allegations from which material injury can be implied.

**2. Municipal Corporations § 2— annexation — municipality of less than 5000 — prerequisites**

In order for an area to be subject to annexation by a municipality under provisions of G.S. 160-453.4(c), not less than 60% of the lots and tracts in the area must be in actual use other than for agriculture, and not less than 60% of the acreage which is in residential use or is vacant must consist of lots and tracts of five acres or less in size.

**3. Municipal Corporations § 2— residential lots — lots with pond adjoining dwelling lots**

Lots containing a pond which were owned jointly by the owners of adjoining dwelling lots and were used as an accessory to the adjoining lots were properly classified as residential in determining whether an area met the 60% "use" test provided in G.S. 160-453.4(c).

**4. Municipal Corporations § 2— annexation — use test — consideration of landlocked lot and fronting lot as single lot**

Municipality properly classified a landlocked lot with its fronting lot in single ownership as a single lot in determining whether an area met the 60% "use" test provided in G.S. 160-453.4(c), such method being calculated to provide reasonably accurate results as required by G.S. 160-453.10.

**5. Municipal Corporations § 2— annexation — property in industrial use — land containing holding basin for industrial waste**

In a proceeding to annex territory pursuant to G.S. 160-453.1 *et seq.*, respondent municipality properly classified as in industrial use a 14.8 acre tract adjoining the parking lot at petitioner's industrial plant, where the tract has been graded and grassed, and the tract contains a holding basin for industrial waste from petitioner's plant and underground sewer lines running to and from the basin.

**6. Municipal Corporations § 2— annexation report — plans for services — failure to call for significant increase in personnel**

In a proceeding to annex territory pursuant to G.S. 160-453.1 *et seq.*, plans in the annexation report for extending garbage collection, fire protection, police protection and street maintenance services to the area to be annexed *are held* to comply substantially with G.S. 160-453.3, the plans

not being defective in failing to call for any significant increase in personnel where the record is devoid of evidence showing any need for increased personnel.

**7. Municipal Corporations § 2— annexation — irregularity in procedure — prejudice to petitioner**

Petitioner, a property owner in one area to be annexed, was not prejudiced by irregularity in the annexation procedure whereby an amendment to the annexation report was not submitted to the public 14 days prior to the public hearing, but was read at the outset of the public hearing, where the amendment related to annexation of an area which did not include petitioner's property and to plans for provision of water and sewer services, and petitioner did not except to the plans for such services.

**8. Municipal Corporations § 2— simultaneous annexation of areas contiguous to each other**

G.S. 160-453.5(g) does not exclude the simultaneous annexation of separate areas contiguous to the municipality which are also contiguous to each other, and if the areas to be annexed meet the standards prescribed by statute, it does not matter that they are contiguous.

**9. Municipal Corporations § 2— annexation ordinance — findings that area is developed for urban purposes**

Requirement of G.S. 160-453.5(e) that annexation ordinance contain specific findings that the area to be annexed is developed for urban purposes is met by statement in the ordinance that 64.2 percent of the total number of lots in said area are used for residential purposes, and 71.3 percent of the total residential and undeveloped acreage consists of lots and tracts five acres or less in size.

APPEAL by petitioner from *Seay, J.,* 27 January 1969, Civil Session FORSYTH Superior Court.

This is a proceeding for the extension of the corporate limits of the Town of Kernersville, North Carolina, pursuant to the provisions of G.S. 160-453.1 through G.S. 160-453.12. The population of the Town of Kernersville as of the census of 1960 was 2942.

Annexation of seven individual areas was proposed. Petitioner is the owner of 38.844 acres of land located in Study Area No. Four, and it is this area which is the subject of this appeal.

At a meeting held on 7 May 1968, continued to 9 May 1968, respondent's Board of Aldermen adopted a resolution stating the intent of respondent to extend its corporate limits to include certain designated areas, among which was Study Area No. Four. The resolution stated that a public hearing on the proposed annexation would be held on 10 June 1968, at which time annexation plans would be explained and property owners would be given the opportunity to be heard. On 21 May 1968, the Board of Aldermen ap-

proved an annexation report and ordered that it be filed with the Town Clerk for availability to the public.

Public hearing was held on 10 June 1968. At the beginning of the hearing, the Mayor read certain recommended amendments to the annexation report. On 6 August 1968, an annexation ordinance was adopted which included Study Area No. Four. Effective date of the ordinance was 15 May 1969.

On 5 September 1968, petitioner filed petition for review pursuant to G.S. 160-453.6.

On 19 September 1968, the Board of Aldermen adopted a resolution that the amendments to the annexation report which were read before the public hearing of 10 June 1968 be "held approved upon said date (10 June 1968)."

By its petition, petitioner, *inter alia*, alleged that it owns 38.844 acres of land in Study Area No. Four, of which no more than 24.048 acres are used for an industrial facility and that at least 14.796 acres are unused except for a one-acre holding basin operated by respondent and that these acres are held for possible future development. The petitioner took the following exceptions to the annexation ordinance:

"(a)   The statutory procedure for annexation, as provided in North Carolina General Statutes, Section 160-453.5, was not followed, in that Section (g) thereof authorizes simultaneous annexation proceedings of two or more areas only where all areas are adjacent to the municipal boundary but are not adjacent to one another. Since Study Area No. Four is adjacent to Study Area No. Three, it is the position of the Petitioner that the proceedings to annex each of these two areas cannot be undertaken simultaneously.

(b)   The prerequisites to annexation specified in GS 160-453.3 are not met, in that the number of people to be employed by the Town of Kernersville for the purpose of providing police protection, fire protection, garbage collection, and street maintenance service is to remain essentially unchanged according to the plans for extension and financing services into annexation areas, as provided in the Annexation Report. Without substantial increases in personnel, the Town of Kernersville will not be able to provide for extending police protection, fire protection, garbage collection, and street maintenance service to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services

are provided within the rest of the municipality prior to annexation, as required by GS 160-453.3(3).

(c)  The provisions of GS 160-453.4(c), requiring that the area to be annexed be developed for urban purposes, have not been met, in that only 55.1% of the total number of lots and tracts in said area are used for residential, commercial, and industrial purposes, and only 56.8% of the total of residential and undeveloped acreage consists of lots and tracts five acres or less in size . . . (the schedule showing alleged number of lots and tracts, their alleged use, acreage, percentage of total residential and undeveloped acreage in lots and tracts 5 acres or less, etc., omitted).

(d)  The Petitioner is informed and believes, and, therefore, alleges that the Town of Kernersville has applied to the United States Government for funds to provide some of the services to be rendered by the Town of Kernersville in the areas to be annexed, and because of fiscal restraint being imposed by the United States Congress, it is questionable whether the money applied for will become available."

The petitioner prayed "that the ordinance relating to the annexation of Study Area No. Four be declared null and void, that the Town of Kernersville be enjoined from annexing the Petitioner's lands, as described herein, until July 1, 1971, and that the Court take such further action and grant such other and further relief as may be proper."

Respondent answered admitting petitioner's ownership of 38.844 acres of land in Study Area No. Four, admitting the adoption of the ordinance, denying all other material allegations, and praying that the appeal be dismissed for that "the law does not provide that the Superior Court may declare the Annexation Ordinance null and void; that the law does not provide that the Town of Kernersville may be enjoined from annexing the petitioner's land until July 1, 1971, but only during the pendency of this appeal;" and further that the Town has complied with the applicable law and "the petitioner has not or will it (sic) not suffer any injury by reason of the matters and things set forth in its petition." Attached to the answer are the documents required by statute.

By leave of court petitioner amended its petition to allege that amendments were made to the annexation report dated 21 May 1968, which were not made available to the public for 14 days prior to the public hearing as required by law; that petitioner and

other interested residents had no notice of changes and were without full facts upon which to base a decision as to whether to appear at the hearing and what position to take. It prayed that an order issue staying the effectiveness of the ordinance as to Study Area No. Four pending the outcome of judicial review of the ordinance; that an order issue remanding the proceedings to the Board of Aldermen to make the annexation report as amended available to the public and that another public hearing be held pursuant to the provisions of G.S. 160-453.5. By leave of court the petition was further amended to pray "that the annexation ordinance be remanded to the Board of Aldermen of the Town of Kernersville for compliance with the annexation statute and, if necessary, amendment of boundaries."

The matter was heard by Judge Seay without a jury. He found facts, made conclusions of law, and affirmed the annexation ordinance without change. Petitioner appealed. The order was entered 6 February 1969. On 1 May 1969, petitioner filed application for the entry of an order staying the operation of the ordinance as to Study Area No. Four pending the final determination of the cause by this Court, or until further order of the Superior Court. From an order entered denying the application, petitioner excepted and appealed.

*Womble, Carlyle, Sandridge & Rice, by E. Lawrence Davis, for petitioner appellant.*

*R. Kason Keiger for respondent appellee.*

MORRIS, J.

[1]   Respondent, as is its right, has filed in this Court a *demurrer ore tenus* asserting that the petition as originally filed and as amended does not state a cause of action in that there is no allegation that petitioner will suffer or believes it will suffer material injury by reason of the alleged failure of respondent to comply with the statutory procedure.

G.S. 160-453.6(a) provides that "[w]ithin thirty days following the passage of an annexation ordinance under authority of this part, any person owning property in the annexed territory who shall believe that he will suffer material injury by reason of the failure of the municipal governing board to comply with the procedure set forth in this part or to meet the requirements set forth in § 160-453.4 as they apply to his property may file a petition in the superior court of the county in which the municipality is located seeking review of the action of the governing board." Subsection (b)

provides "Such petition shall explicitly state what exceptions are taken to the action of the governing board and what relief the petitioner seeks." The original petition as amended clearly sets out petitioner's exceptions and the prayer for relief as amended brings the relief requested within the relief allowed by the statute. G.S. 160-453.6(g).

While it may be conceded that the better practice would be to allege specifically that petitioner will suffer material injury by reason of the failure of respondent to comply with the statutory procedures, we do not believe that failure to do so in this case is fatal, particularly since the petition contains allegations from which material injury can be implied. See *Rheinhardt v. Yancey*, 241 N.C. 184, 84 S.E. 2d 655. It is obvious that respondent has not been prejudicially misled by the failure of petitioner to allege specifically that it will suffer material injury. Indeed in its answer, respondent categorically denies material injury by averring "the petitioner has not or will it (sic) not suffer any injury by reason of the matters and things set forth in its petition." See 1 McIntosh, N.C. Practice 2d, (1969 Supp.) § 1194. We think the original petition as amended is sufficient to withstand demurrer. Demurrer is overruled.

Petitioner has brought forward 14 assignments of error covering some 57 exceptions.

Twenty-seven exceptions, embraced in assignments of error Nos. 9 and 10, are directed to the contention that Study Area No. Four does not meet the requirements of G.S. 160-453.4(c) which requires that the area to be annexed be developed for urban purposes. This section of the statute defines an area developed for urban purposes as "any area which is so developed that at lease sixty per cent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty per cent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size."

**[2]** The statutory standard consists of two tests for determining availability of an area for annexation: (1) the *use* test, which requires that not less than 60% of lots and tracts in the area must be in actual use, other than for agriculture, and (2) the *subdivision* test, which requires that not less than 60% of the acreage which is in residential use, if any, and is vacant must consist of lots and tracts of five acres or less in size. Both tests must be met in order

for an area to meet the statutory standard. *Lithium Corp. v. Bessemer City,* 261 N.C. 532, 135 S.E. 2d 574.

**[3, 4]**    Petitioner earnestly contends that the court erred in finding as a fact that Study Area No. Four is developed for urban purposes. It contends that the use test is not met because certain lots were erroneously classified as in use for residential purposes which should have been classified as vacant and not in use. It appears from the evidence that the respondent used county tax maps and records and aerial photographs as approved by G.S. 160-453.10. The expert witness who testified for respondent testified that there are several methods which can be used in determining what is a lot in making an appraisal of an area to be annexed. One is to count each numbered lot separately. Another is to consider a landlocked lot as part of the lot in front of it and group the two lots — the landlocked lot and the one providing it with access to a street — as being a single lot. A third method would be to consider a group of lots in single ownership and used for a single purpose as being a tract within the meaning of the statute, and count tracts rather than lots. The evidence tended to show that the area qualified under any of the above methods but that the method, the results of which were actually used, was the method by which a landlocked lot was considered as part of its fronting lot and all other lots counted separately. It appears to us that any one of the methods would be "calculated to provide reasonably accurate results" as required by G.S. 160-453.10. Petitioner contends that a lot cannot be classified as being in residential use unless it contains a habitable dwelling unit. G.S. 160-453.9(2) defines "[u]sed for residential purposes" as meaning "any lot or tract five acres or less in size on which is constructed a habitable dwelling unit." Lots 5, 6, 7, 8, 9, 10, 11 and 12 in Tax Block 2122 were classified as in residential use. It appears from the evidence that these lots contain a pond and that the pond is in the rear of lots 1, 2, 3 and 4. The pond lots are owned jointly by the owners of lots 1, 2, 3 and 4. They were considered as being an accessory use to the dwellings on lots 1 and 2 and 3 and 4 as "being sort of like a fish pond, or a lily pond beside somebody's house." We do not deem this an unreasonable result nor a result not within the intent of the legislature in its definition. To adopt the interpretation contended for by petitioner would result in unreasonable and absurd applications. For example: If A owned two lots, each having a 75-foot frontage, and he constructed his residence on one lot and landscaped the other with a pond, shrubbery, etc., surely it would be less than reasonable to classify the lot containing the dwelling as in residential use and the other lot as not in residential use. Nor do

we think it unreasonable and beyond the statutory definition to classify a landlocked lot and its fronting lot in single ownership as a single lot in residential use.

Respondent concedes that it erroneously classified lot 13R in Tax Block 5409 as in residential use. There is nothing in the record indicating, nor do the exhibits disclose, the area of lot 13R, nor does petitioner contend that this lot, standing alone, if reclassified correctly as not in use would render the area ineligible for annexation.

[5] Petitioner further contends that the 14.796-acre tract owned by it was erroneously classified as in industrial use. According to the annexation report, the total residential and undeveloped acreage in Study Area No. Four was 57.7 acres, that the acreage in lots and tracts five acres or less in size was 41.2 acres, and that the percentage in lots and tracts five acres or less in size was 71.3%. Respondent concedes that if the 14.796-acre tract located south of petitioner's plant and parking lot were classified as not in use, the percentage of acreage in residential use and vacant use in lots and tracts five acres or less in size would be reduced to 41.2%, thus clearly making Study Area No. Four ineligible for annexation.

Petitioner owns approximately 38 acres in Study Area No. Four. It does not question the classification as in industrial use of any of the acreage other than the 14.796 acres which it claims should be classified as not in use for industrial purpose.

Petitioner's witness testified that the 14.796 acres were not used for industrial purposes. However, he further testified that that particular portion of petitioner's property lies south of and adjoins the parking lot which itself lies immediately south of petitioner's finishing plant. He testified that that portion of petitioner's property is not landscaped as is the area immediately surrounding the plant; that the 14.796-acre tract has been graded and that grass has been planted and it is mowed occasionally. On the 14.796-acre portion is a holding basin which receives the industrial waste from the plant. (On cross-examination.) The industrial waste gets to the basin by gravity through underground sewer lines. The holding basin is between one-half and three-quarters of an acre and there is a concrete ditch surrounding it. The holding basin is located in the proximity of the center of the 14.796-acre tract. A sewer line leads from underneath the parking lot across a portion of the area in controversy to the holding basin. Another underground line runs from the basin across another portion of the 14.796-acre tract to connect with the city sewer system.

Respondent's witness testified that immediately to the south of

the holding basin is a wooded section containing approximately 3.65 acres and that if that portion of the 14.796 acres were classified as not in industrial use, the area would still qualify for annexation.

Appellant relies on *R. R. v. Hook*, 261 N.C. 517, 135 S.E. 2d 562. There the crucial question was the proper classification of a 13.747-acre tract owned by Ideal Industries, Inc. About one-tenth (1.4 acres) of the tract was used for parking. It had no buildings or structures of any kind on it. Although the plant and buildings of Ideal Industries were located in the area to be annexed, they were on tracts and lots which did not adjoin the 13.747-acre tract and, apparently from the evidence, were across the road. At the time of the adoption of the ordinance it had not been graded and was used for a "cow pasture". At the time of the adoption of the ordinance there was no use whatever being made of the land by Ideal Industries. This case is clearly factually distinguishable.

We think the court's finding that Study Area No. Four was developed for urban purposes is sufficiently supported by the evidence and does not constitute error.

**[6]** Petitioner, by assignment of error No. 11, next contends that the annexation report does not comply with G.S. 160-453.3 in that it does not contain adequate plans for extending garbage collection, fire protection, police protection, and street maintenance service to the area to be annexed on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

The portions of the annexation report questioned by this assignment of error are set out verbatim:

"B. POLICE SERVICE

1. EXTENSION. Police protection will be extended immediately upon the effective date of annexation into all areas annexed.

The present police force was recently increased to six men operating two radio-equipped patrol cars and a three-wheeled cycle which is also radio equipped. Approximately 23 miles of streets are patrolled 24 hours a day with patrol cars dispatched by a base radio station which is manned also around the clock. The six proposed annexation areas will add approximately 10 miles of new streets which are largely residential in character. The present police force will be able to patrol and provide police protection in the six proposed annexation areas at the same level now provided inside the Town.

2. FINANCING. The only additional cost anticipated as a direct result of annexation will be increased vehicle operating expense. Since patrol activity is necessarily most intensely provided in the commercial areas, the increase in operating expense will not be directly proportional to the additional street mileage in the annexation areas. It is estimated that present vehicle operating costs of approximately $4,000.00 (including depreciation) will be increased by 20 percent or $800.00. This additional expense will be financed from additional ad valorem tax revenue from the six proposed annexation areas.

C. FIRE PROTECTION SERVICE

1. EXTENSION. All areas to be annexed will begin to receive fire protection from the Town fire department immediately on the effective date of annexation. The present fire insurance rating classification for the Town is NB7 and all residential property annexed will come under this classification. Fire protection is provided by a volunteer fire department manned by two full time paid firemen and sixteen volunteers and equipped with one 1,000 gpm pumper engine and two smaller standby pumpers. Specifications have been prepared and bids will be invited for a new additional pumper engine immediately following the adoption of the 1968-69 budget. A mutual aid contract now exists with the Beeson's Crossroads Fire District in areas outside the Town where hydrants are available.

Planned improvements in the Town water system, primarily increased elevated storage and larger trunk mains, will also improve the Town's overall fire protection status. It is anticipated that these improvements will allow an improvement in fire insurance classification from NB7 to NB6.

2. FINANCING. The new pumper engine will cost approximately $20,000.00. This expense will be met in part from reserves in the Equipment Trust Fund and in part from ad valorem taxes. No significant increase in annual operating cost is anticipated directly related to annexation.

D. STREET MAINTENANCE

1. EXTENSION. Town maintenance of all streets falling under its responsibility in the areas to be annexed will begin immediately upon the effective date of annexation. An additional 4.7 miles of streets are involved; 16.5 miles are now maintained inside the Town. Street maintenance is performed by the General Public Works crew which includes one foreman, one

equipment operator and five general laborers. Equipment available for street maintenance includes a grader, a front end loader, a backhoe with front end loader, a tar machine, a roller, and two dump trucks. An additional dump truck, costing approximately $4,500.00 will be required to properly maintain the additional street mileage.

2. FINANCING. Funds for increased street maintenance costs will come from ad valorem taxes in the annexation areas and increased Powell Bill revenue as a result of annexation. The additional cost for street maintenance is estimated at approximately $6,000.00 based upon the amount of additional street mileage compared to the present mileagge for which the Town is responsible.

\*          \*          \*

F. GARBAGE COLLECTION

1. EXTENSION. Collection of garbage in the annexation areas will begin immediately on the effective date of annexation. The Town garbage collection service is provided by two three-man crews operating MB type packer trucks. Residential pickups are made twice weekly, either Mondays and Thursdays or Tuesdays and Fridays. In addition, limbs and other bulky refuse brought to the street are picked up Wednesdays and Saturday mornings as requested. Commercial and industrial establishments receive pickup service as required. An additional, more efficient type, packer will be needed leaving one of the present units available as a standby unit and for possible use as a leaf collector. One additional man will be needed as a standby helper and as an assistant at the landfill operation.

The landfill is available for use by Town residents at no charge when a permit has been obtained from the Town office.

2. FINANCING. It is estimated that 10 miles of additional street mileage in the annexation areas will increase vehicle operating costs by approximataly 50 percent over the present cost of $3,300.00, or by approximately $1,650.00. The new packer truck will cost approximately $13,000.00 and the additional man about $4,00.00. The increased operating cost of $5,650.00 and the new packer will be financed from ad valorem taxes in the six annexation areas."

We are of the opinion that these plans are in substantial compliance with the statute and are adequate. Petitioner contends that the plans are defective in that they do not call for any significant increase in personnel. The record is devoid of any evidence showing

any need for increased personnel. This assignment of error is over-ruled.

[7] Assignments of error Nos. 8, 12 and 16 are directed to the failure of the annexation proceedings completely and substantially to comply with statutory requirements.

G.S. 160-453.3 requires that a municipality desiring to annex areas pursuant to the authority given by the statute, shall, prior to the public hearing, prepare a report setting forth plans for extending services to the areas to be annexed. G.S. 160-453.5(c) provides that "[a]t least fourteen days before the date of the public hearing, the governing board shall approve the report provided for in § 160-453.3, and shall make it available to the public at the office of the municipal clerk. In addition, the municipality may prepare a summary of the full report for public distribution." Here the annexation report was prepared, approved, and made available to the public, all in accordance with the statute. The petitioner contends, however, that the procedure is fatally defective for that the report was amended and the amendment was not submitted to the public 14 days prior to the hearing. G.S. 160-453.5(e) provides that "[t]he municipal governing board shall take into consideration facts presented at the public hearing and shall have authority to amend the report required by § 160-453.3 to make changes in the plans for serving the area proposed to be annexed so long as such changes meet the requirements of § 160-453.3." Nowhere does the statute require a second public hearing after amendment. While it may be that the statute does not contemplate amendment to the annexation report after filing for public use and prior to the hearing, we do not perceive how petitioner has been prejudiced. The amended report was read at the outset of the public hearing. The record discloses that the major changes were the deletion of Study Area No. Two and changes with respect to providing water and sewer services. The original petition and amendments thereto do not take exception to the furnishing of water and sewer services. We are of the opinion that this irregularity in procedure, if any it is, did not constitute prejudicial error against the appellant in this case.

[8] Petitioner presented evidence which was not contradicted that Study Area No. Four and Study Area No. Three are contiguous and that they were being annexed simultaneously. We assume, although the record is silent as to this, that no property owner in Study Area No. Three has petitioned the Superior Court for review. G.S. 160-453.5(g) provides: "Simultaneous Annexation Proceedings. — If a municipality is considering the annexation of two or more areas

which are all adjacent to the municipal boundary but are not adjacent to one another, it may undertake simultaneous proceedings under authority of this part for the annexation of such areas."

Petitioner argues that this section of the statute must be interpreted to exclude annexation of areas contiguous to the municipality which are also contiguous to each other. We do not agree. G.S. 160-453.4 is entitled "Character of area to be annexed" and provides

"(a)   A municipal governing board may extend the municipal corporate limits to include any area which meets the general standards of subsection (b), and which meets the requirements of subsection (c).

(b)   The total area to be annexed must meet the following standards:

(1)   It must be adjacent or contiguous to the municipality's boundaries at the time the annexation is begun.

(2)   At least one eighth of the aggregate external boundaries of the area must coincide with the municipal boundary.

(3)   No part of the area shall be included within the boundary of another incorporated municipality.

(c)   (requires that the area must be developed for urban purposes.)

(d)   (not applicable.)"

We are of the opinion that if the areas to be annexed meet the standards prescribed, it does not matter whether they be contiguous. G.S. 160-453.5(g) simply alleviates the necessity for separate annexation proceedings where areas to be annexed are adjacent to the municipality but not adjacent to each other and specifically provides that annexation procedures may be simultaneously instituted and carried forward. We note that the evidence here was that had Area 3 and Area 4 been consolidated as one area, it still would have qualified for annexation. The reason for two separate areas is not apparent from the record, nor do we think the motive therefor material.

[9]   Petitioner further contends that the ordinance contains no specific findings that the area to be annexed is developed for urban purposes as required by G.S. 160-453.5(e). The section of the ordinance attached states "d.   The area to be annexed is developed for

urban purposes in that 64.2 percent of the total number of lots and tracts in said area are used for residential purposes, and 71.3 percent of the total of residential and undeveloped acreage consists of lots and tracts five acres or less in size." In addition, the ordinance specifically stated that the annexation report was on file in the office of the Clerk for public inspection. We are not unmindful of *Huntley v. Potter*, 255 N.C. 619, 122 S.E. 2d 681. There the annexation report and the ordinance merely stated, in identical phraseology, ". . . the area to be annexed is in the process of being developed for urban purposes and, as such, more than 60% of same is in use for residential, commercial, industrial, institutional or governmental purposes and that at least 60% of the total acreage, not counting the acreage used on the aforementioned date for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five (5) acres or less in size." The Court noted that the record contained no other finding as to whether the area was developed for urban purposes, but that it merely adopted the definition as the only showing relative to the nature of the area. The map in the record did not show on what lots or tracts houses or buildings were located, nor was the method of calculation shown, nor were the actual percentages of development shown. Here these objections are not present. We think the ordinance in this case sufficiently complies with the statute.

The annexation proceedings, in our opinion, substantially complied with the statutory requirements, and these assignments of error are overruled.

We do not deem it necessary or practical to discuss each of the remaining assignments of error *in seriatim*. We have carefully examined the pleadings, the documentary and oral evidence introduced in the Superior Court and we find no prejudicial error in the proceedings in the Superior Court which would justify disturbing the result thereof.

Affirmed.

MALLARD, C.J., and HEDRICK, J., concur.