DONNA L. BROWN, WESLEY R. BROWN AND WIFE, MARTEE U. BROWN, JACK M. FISHER, AND WIFE, CATHEY G. FISHER, ANTHONY N. HUBBARD AND WIFE, FRANCES M. HUBBARD, JAMES M. MECUM, JR., GARNETT L. MIDKIFF, JR., E. RAYMOND NICHOLSON, DONALD W. PETERS, G. FLOYD SIDES AND WIFE, JO ANN SIDES, PETITIONERS v. CITY OF WINSTON-SALEM, RESPONDENT

No. COA05-464

(Filed 7 March 2006)

## 1. Cities and Towns— annexation—street maintenance

A municipality is in compliance with N.C.G.S. § 160A-47(3)(a) where the street maintenance in the area to be annexed is the same or substantially the same as in the city limits. There was sufficient evidence here to support the trial court's finding that a city would provide the same street maintenance services within the annexed area.

## 2. Cities and Towns— annexation—subdivision test—evidence

The trial court did not abuse its discretion by ruling in an annexation case that petitioners' spreadsheets could be admitted only for the limited purpose of showing their contentions concerning the disputed number of lots in the area to be annexed.

## 3. Cities and Towns— annexation—subdivision test—methodology

When a city or municipality has calculated lots one way for an annexation and a challenger argues that they should be counted a different way, the critical question is whether the method utilized is calculated to provide reasonably accurate results, not whether the city followed one method or another. The trial court here properly found that petitioners offered no reliable evidence tending to show that respondent's methodology was inaccurate and not calculated to provide reasonably accurate results.

Appeal by petitioners from the order entered 27 May 2004 by Judge Michael E. Helms in Forsyth County Superior Court. Heard in the Court of Appeals 16 November 2005.

*Richard J. Browne, for petitioner-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Roddey M. Ligon, Jr., and Office of Winston-Salem City Attorney, by Ronald G. Seeber and Charles G. Green, Jr., for respondent-appellee.*

JACKSON, Judge.

On 24 March 2003, the City of Winston-Salem, North Carolina ("respondent") adopted a "Resolution of Intent of the City Council of the City of Winston-Salem to Consider Annexing Certain Territory And Adopting An Annexation Report." Pursuant to the resolution, respondent intended to annex certain properties located around the city's limits involuntarily. Notices of an informational meeting were sent to all owners of real property within the proposed annexation area. A public hearing was held on the matter on 27 May 2003, and on 23 June 2003 the City adopted amendments to the annexation ordinances. The amended annexation ordinances did not add any new properties to the proposed annexation area, and the effective date of the annexation was to be 30 June 2004.

On 21 August 2003, certain individuals owning real property in the proposed annexation area ("petitioners") filed a petition seeking judicial review of respondent's annexation ordinances pursuant to North Carolina General Statutes, section 160A-50. Respondent's amended annexation ordinances included sixteen separate areas identified by letters A-Q, and excluded the area which originally had been labeled as area D. As none of the petitioners owned property in seven of the areas, the trial court entered an order declaring that annexation as to those areas was to go into effect on 30 June 2004, as specified in the annexation ordinances. These areas were not a part of the instant proceeding before the trial court.

For purposes of qualifying for annexation, respondent divided each area into subareas, and then qualified each of the subareas pursuant to the provisions of North Carolina General Statutes, section 160A-48. During the trial on the matter, which occurred over the course of five days in April and May 2003, the Principal Planner for respondent testified regarding the methodology used by respondent in qualifying the subareas for annexation. The Principal Planner testified that each of the subareas qualified under one of the provisions of section 160A-48. Only specific portions of section 160A-48 were relevant to petitioners' action, and those relevant portions of North Carolina General Statutes, section 160A-48 provide in pertinent part:

    (c) Part or all of the area to be annexed must be developed for urban purposes at the time of approval of the report provided for in [N.C. Gen. Stat. §] 160A-47. Area of streets and street rights-of-way shall not be used to determine total acreage under this section. An area developed for urban purposes is

defined as any area which meets any one of the following standards:

. . . .

(2) Has a total resident population equal to at least one person for each acre of land included within its boundaries, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage consists of lots and tracts three acres or less in size and such that at least sixty-five percent (65%) of the total number of lots and tracts are one acre or less in size; or

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts three acres or less in size. For purposes of this section, a lot or tract shall not be considered in use for a commercial, industrial, institutional, or governmental purpose if the lot or tract is used only temporarily, occasionally, or on an incidental or insubstantial basis in relation to the size and character of the lot or tract. For purposes of this section, acreage in use for commercial, industrial, institutional, or governmental purposes shall include acreage actually occupied by buildings or other man-made structures together with all areas that are reasonably necessary and appurtenant to such facilities for purposes of parking, storage, ingress and egress, utilities, buffering, and other ancillary services and facilities;

N.C. Gen. Stat. § 160A-48(c) (2004). On 27 May 2004, the trial court entered an order declaring the disputed sixteen annexation ordinances to be valid in all respects. Petitioners now appeal from this 27 May 2004 order.

We begin by noting that a

superior court's review of an annexation ordinance is limited to deciding (1) whether the annexing municipality complied with the statutory procedures; (2) if not, whether the petitioners will

suffer material injury as a result of any alleged procedural irregularities; and (3) whether the area to be annexed meets the applicable statutory requirements.

*Hayes v. Town of Fairmont,* 167 N.C. App. 522, 523-24, 605 S.E.2d 717, 718 (2004) (citing *In re Annexation Ordinance,* 278 N.C. 641, 647, 180 S.E.2d 851, 855 (1971)), *disc. review denied,* 359 N.C. 410, 612 S.E.2d 320 (2005). Further,

> Where the annexation proceedings show *prima facie* that the municipality has substantially complied with the requirements and provisions of the annexation statutes, the burden shifts to the petitioners to show by competent evidence a failure on the part of the municipality to comply with the statutory requirements or an irregularity in the proceedings that materially prejudices the substantive rights of the petitioners.

*Id.* at 524, 605 S.E.2d at 718-19. On appeal, our review is limited in that the trial court's findings of fact are binding on this Court where they are supported by evidence. *U.S. Cold Storage, Inc. v. City of Lumberton,* 170 N.C. App. 411, 413, 612 S.E.2d 415, 418 (2005) (quoting *Briggs v. City of Asheville,* 159 N.C. App. 558, 560, 583 S.E.2d 733, 735, *disc. review denied,* 357 N.C. 657, 589 S.E.2d 886 (2003)). A trial court's conclusions of law, however, are entitled to a *de novo* review. *Id.* at 414, 612 S.E.2d at 418.

**[1]** Petitioners first contend the trial court erred in finding that streets in the proposed annexation area would be maintained in substantially the same manner as the streets in the city's limits prior to annexation.

North Carolina General Statutes, section 160A-47(3)(a) (2004) requires that an annexation report contain a statement that the city will "[p]rovide for extending . . . street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." Our courts have held that

> the primary duty of street maintenance in the area in question, after annexation, is upon the city, and it must in good faith make plans to maintain the streets, whether paved or unpaved, "on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation."

*In re Annexation Ordinance*, 255 N.C. 633, 645, 122 S.E.2d 690, 699 (1961).

The city of Winston-Salem's Final Annexation Report, adopted on 23 June 2003, stated that:

> All municipal services will be provided to the annexed areas as required by North Carolina General Statutes Section 160A-47. On June 30, 2004, the proposed effective date of annexation, the City of Winston-Salem will provide each major municipal service on substantially the same basis and in the same manner as such services are provided within the rest of the municipality immediately prior to annexation.
>
> . . . .
>
> **Paved Street Maintenance**
>
> Paved streets in the proposed annexation areas that were constructed to State of North Carolina or City of Winston-Salem standards will be maintained in accordance with city policies. . . .
>
> **Street Paving**
>
> Present city paving policies will apply to the proposed annexation areas. . . .
>
> **Dirt Street Paving**
>
> Dirt streets will be paved to ribbon pavement standards provided adequate dedicated right-of-way exists or is dedicated by abutting property owners. . . . The cost of upgrading dirt streets to ribbon pavement standards will be borne totally by the city. . . .

Petitioners contended at trial that respondent planned to treat ribbon streets in the annexed area differently than it currently treated ribbon streets within the city's limits. Ribbon streets are paved streets that are without curbs and gutters. Petitioners contended that respondent currently maintained ribbon streets within its city limits, however upon annexation, it would not provide the same maintenance to all ribbon streets in the annexed area.

The trial court specifically found that respondent would provide the same street maintenance services within the annexation area as it currently was providing within the existing city limits. As noted pre-

viously, a trial court's findings of fact are conclusive on appeal when they are supported by competent evidence. *U.S. Cold Storage,* 170 N.C. App. at 413, 612 S.E.2d at 418. At trial, respondent's Streets Director testified concerning respondent's plans to maintain streets located within the annexation area. She stated that ribbon streets in the annexed area that currently were maintained by the State would become city-maintained upon annexation. She also testified that respondent currently maintains some ribbon streets within its city limits, but not all of them. Citizens living on those streets not maintained by the city may go through a process of asking the city to inspect the streets and adopt them as city streets, whereby they then would become city-maintained ribbon streets. The Streets Director testified that the same policies and procedures would apply to ribbon streets in the annexation area that were not presently being maintained by the State.

Thus, there is sufficient evidence to support the trial court's finding that respondent would be providing the same street maintenance services within the annexation area as it currently was providing within the existing city limits. Our Supreme Court recently has held that an annexing municipality need not provide *all* of the categories of public services as listed in the annexation statutes. *See Nolan v. Village of Marvin,* 360 N.C. 256, 261-62, 624 S.E.2d 305, 308-09 (2006). Therefore, we hold that where a municipality will be providing the same, or substantially the same street maintenance in the area to be annexed, the municipality is in compliance with the requirements of section 160A-47(3)(a). Therefore, we hold respondent's plans for street maintenance in the annexation area are in substantial compliance with the statutory requirements, and petitioners' assignment of error is overruled.

**[2]** Petitioners next contend the trial court erred in ruling that certain documents offered as evidence by petitioners could be used only for the limited purpose of demonstrating petitioners' contention as to how respondent should have qualified the areas for annexation, and could not be offered to show that respondent's methodology was not calculated to provide reasonably accurate results.

At trial, petitioners introduced into evidence various spreadsheets which were based upon data provided by respondent to petitioners. The data was comprised of the city's tax database records, including the number of lots, acreage of the lots, occupants per dwelling on the lots, and the classification of each lot as determined by respondent. Petitioners' consultant took the data provided by the

city, and input it into spreadsheets ("ROK spreadsheets"). The consultant did not perform any analysis of the data, and did not attempt to classify any of the lots under North Carolina General Statutes, section 160A-48(c) for purposes of qualifying for annexation under the subdivision or use tests. Petitioners' counsel then used the consultant's spreadsheets and created another set of spreadsheets himself in which he analyzed all of the lots in the annexation area, and classified the lots under sections 160A-48(c)(2) and (3) as petitioners proposed the lots should have been classified. As noted by petitioners' counsel at trial, petitioners and respondent had different methods for determining what a lot was for the purposes of sections 160A-48(c)(2) and (3), and based on petitioners' determination of what should be considered a lot, respondent's annexation plan did not satisfy the requirements of section 160A-48(c).

Prior to trial, the parties stipulated to the admissibility of the spreadsheets created by petitioners' consultant and counsel. The stipulations stated:

4. The ROK Spreadsheets were produced from the data compiled within the City's GIS Shape Files of the Lots and Tracts, said GIS shape files having been obtained from the City, pursuant to a public records request, as a CD.

. . . .

6. In producing the ROK Spreadsheets, ROK, Inc. . . . did not perform any of the analyses under [N.C. Gen. Stat.] § 160A-48(c), including, for any subdivision or use test thereunder, any counting of the Lots and Tracts or any totaling of any Lot or Tract's acreage; or offer any advice or information or opinion as to what constitutes a lot or tract for municipal annexation purposes.

7. Comparisons of the total acreage and number of dwelling units within the Annexation Areas were made by the Petitioners from the ROK Spreadsheets and City GIS Shape Files . . . .

8. Analyses of the subdivision and use tests under [N.C. Gen. Stat.] § 160A-48(c)(2) and (3) were performed by Petitioners . . . and the results of those analyses were compiled and summarized by Petitioners on EXCEL-formatted spreadsheets . . . .

. . . .

10. Petitioners contend that, for purposes of the subdivision tests under [N.C. Gen. Stat.] § 160A-48(c), the City incorrectly counted the total number of Lots and Tracts and incorrectly totaled the acreage of those Lots and Tracts consisting of more than one parcel and that Petitioner's . . . Spreadsheets correctly count the total number of Lots and Tracts and correctly total the acreage of those Lots and Tracts consisting of more than one parcel.

11. The City contends that its determination as to what constituted a Lot or Tract is the same as shown on the Forsyth County Tax Office Maps.

. . . .

13. The ROK Comparison and [petitioner's] Spreadsheets shall be admitted into evidence.

In calculating the number of lots and acreage of the lots, respondent used the Forsyth County tax maps. Specifically, respondent pulled the tax records for all of the properties in the annexation area, and counted the number of individual lots. In total, there were approximately twelve thousand, three hundred (12,300) individual lots included in respondent's proposed annexation area. When an individual taxpayer owned multiple lots that were contiguous to one another, these lots had been combined into one tax bill by the county tax office for the convenience of the taxpayer and the tax office. The boundaries of the various lots were set by deeds, plats or recorded survey, and were not set arbitrarily by the tax office. Therefore, one taxpayer may own a four acre piece of property which is subdivided by deed or plat into eight half acre lots. In this example, respondent would have counted the taxpayer's property as consisting of eight separate lots for the purposes of qualifying for annexation under section 160A-48(c). However, petitioners' contention at trial, and through their spreadsheets, was that individual lots that were contiguous and owned by the same person should be counted as one lot for the purposes of section 160A-48(c).

At trial, petitioners attempted to introduce counsel's spreadsheets into evidence for the purpose of showing that the methodology used by respondent in calculating lots based on the county tax maps was erroneous. Counsel for respondent objected, and the trial court sustained respondent's objection. The trial court held that the parties' stipulation that the spreadsheets could be admitted into evidence did not constitute a stipulation by respondent that either the analysis per-

formed by petitioners' counsel or counsel's results were accurate or admissible. The trial court found that the stipulation was merely a stipulation as to what petitioners "contended" the results should have been had respondent analyzed the lots as proposed by petitioners. The court stated that the spreadsheets would be admitted for the purposes proposed by petitioners only after petitioners presented expert testimony regarding the methodology used and the accuracy of the results. However, during the course of the trial, petitioners failed to provide any expert testimony concerning the spreadsheets. Petitioners contended at trial, and contend on appeal, that the testimony by respondent's Principal Planner effectively constituted the necessary expert testimony such that petitioners' spreadsheets should have been qualified as admissible for the purposes proffered by petitioners.

On appeal, the standard of review of a trial court's decision to exclude or admit evidence is that of an abuse of discretion. *Williams v. Bell,* 167 N.C. App. 674, 678, 606 S.E.2d 436, 439 (citing *Carrier v. Starnes,* 120 N.C. App. 513, 519, 463 S.E.2d 393, 397 (1995)), *disc. review denied,* 359 N.C. 414, 613 S.E.2d 26 (2005). An abuse of discretion will be found only when the trial court's decision " 'was so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* at 678, 606 S.E.2d at 439 (citations omitted). In addition, Rule 901 of our Rules of Evidence requires that "as a condition precedent to admissibility" evidence must be authenticated or identified "sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2004). Authentication under Rule 901 may be satisfied through the testimony of a witness who has knowledge of the matter, and who can testify "that a matter is what it is claimed to be." N.C. Gen. Stat. § 8C-1, Rule 901(b)(1) (2004); *see Kroh v. Kroh,* 152 N.C. App. 347, 353, 567 S.E.2d 760, 764 (2002).

In the present case, petitioners failed to produce any evidence or testimony regarding the methodology used in analyzing the data in the way in which petitioners did, and they failed to provide any testimony which would authenticate counsel's spreadsheets and the accuracy of the data contained in them. Although the testimony of respondent's Principal Planner may have somewhat tracked the information in the spreadsheets, her testimony neither referenced the methodology used in creating the spreadsheets nor the analysis and results reached by petitioners' counsel. The Principal Planner's testimony primarily consisted of a review of how respondent determined

what constituted a lot, and the methodology used to classify the various lots under section 160A-48. Although she did testify concerning the number of lots, acreage and respondent's classification of more than 450 separate lots, she in no way testified regarding all of the almost 12,300 proposed lots in the annexation area. She also did not testify regarding petitioners' proposed classification of the various lots. Therefore, we hold the trial court's ruling that petitioners' spreadsheets could be admitted only for the limited purpose of showing petitioners' contentions was proper, and did not constitute an abuse of discretion.

[3] Finally, petitioners contend the trial court erred in finding that "no reliable evidence [was] offered as to the subdivision test percentages except that offered by the City." Specifically, petitioners contend the trial court erred in finding that no reliable evidence had been presented which showed that respondent's methodology in determining which lots qualified for annexation purposes was a method which was not calculated to provide reasonably accurate results.

As held by our Supreme Court, when an annexation ordinance, such as respondent's, recites substantial compliance with the requirements of Chapter 160A, this constitutes a *prima facie* case that the ordinance is in statutory compliance. *Thrash v. City of Asheville*, 327 N.C. 251, 393 S.E.2d 842 (1990). In the present case, the trial court concluded, and we agree, that respondent complied with all statutory requirements in developing the annexation ordinance. Therefore, the burden of proof then shifts to the petitioners who are challenging the ordinance, to show that respondent failed to comply with the statutory requirements, or that there was an "irregularity in proceedings which materially prejudice the substantive rights of petitioners." *In re Annexation Ordinance*, 255 N.C. at 642, 122 S.E.2d at 697; *see also Thrash*, 327 N.C. at 255, 393 S.E.2d at 845. Our statutes require that the methodology used by respondent to qualify properties for annexation be one that is "calculated to provide reasonably accurate results." N.C. Gen. Stat. § 160A-54 (2004). In addition, a superior court reviewing a municipality's classification of property pursuant to section 160A-48

> shall accept the estimates of the municipality unless the actual population, total area, or degree of land subdivision falls below the standards in [N.C. Gen. Stat. §] 160A-48:

> . . . .

(2) As to total area if the estimate is based on an actual survey, or on county tax maps or records, or on aerial photographs, or on some other reasonably reliable map used for official purposes by a governmental agency, unless the petitioners on appeal demonstrate that such estimates are in error in the amount of five percent (5%) or more.

N.C. Gen. Stat. § 160A-54 (2004). When a city or municipality has calculated lots in one way, and a challenger to the annexation argues they should be counted in a different way, "[t]he critical question is not whether the city followed one method or another in calculating the number of lots, but whether 'the method utilized is calculated to provide reasonably accurate results.'" *Thrash*, 327 N.C. at 256, 393 S.E.2d at 846.

In the present case, respondent's Principal Planner testified as to the precise methodology utilized by respondent in calculating the number of lots in each subarea, and how respondent then qualified the lots and ultimately the subareas under the statutory provisions. Petitioners presented into evidence one hundred and twenty-five exhibits consisting of tax records showing the tax bill for a piece of property and the number of lots into which the piece of property was divided. Petitioners' counsel walked respondent's Principal Planner through each of the 125 exhibits, and she testified regarding how many lots were in each tax bill, and how each of the lots was classified pursuant to North Carolina General Statutes, section 160A-48. She testified that respondent relied not only on the county tax maps and aerial photos of each piece of property which were on file with the tax office, but also that employees for respondent personally visited each of the lots proposed for annexation.

Our courts previously have held that the use of county tax maps in qualifying lots for annexation constitutes one of the methods which would be calculated to provide reasonably accurate results in compliance with section 160A-54. *See Sonopress, Inc. v. Town of Weaverville*, 149 N.C. App. 492, 505, 562 S.E.2d 32, 39-40 (2002); *Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 20-21, 356 S.E.2d 599, 604 (1987), *aff'd*, 321 N.C. 598, 364 S.E.2d 139 (1988); *Scovill Mfg. Co. v. Town of Wake Forest*, 58 N.C. App. 15, 20-21, 293 S.E.2d 240, 245 (1982); *Adams-Millis Corp. v. Kernersville*, 6 N.C. App. 78, 84, 169 S.E.2d 496, 500 (1969). At trial, petitioners failed to present any evidence showing that respondent used an arbitrary method in calculating lots or that the county tax maps used by respondent were erroneous or incorrect. In addition, as peti-

tioners' spreadsheets properly were not admitted into evidence for the purposes of showing that petitioners' proposed classification of lots was the correct way in which the lots should have been qualified, petitioners therefore failed to present any evidence that the manner in which respondent classified the individual lots was erroneous.

In fact, not one property owner or petitioner testified that they owned any of the property which was illustrated by any of petitioners' 125 exhibits. Further, not one property owner or petitioner testified that respondent had miscalculated the acreage of their property or misclassified it under the statutory requirements. Petitioners' 125 exhibits represented just 457 of the more than 12,300 lots which were included in the proposed annexation ordinances. At trial, only one petitioner testified. He testified about his property, and the fact that he currently lives in a rural part of the county, and that he does not want things to change. He also testified that he has concerns about the annexation, and that he worries that the character of the property around his will change. He did not offer any testimony concerning the acreage of his property, the conditions and use of it, or that respondent's tax information regarding his property was inaccurate.

Petitioners failed to carry their burden of demonstrating a misclassification of the lots by respondent, and have failed to show that the county tax maps relied upon by respondent were flawed or inaccurate. Therefore, we hold the trial court properly found that petitioners offered no reliable evidence which tended to show that respondent's methodology was inaccurate and not calculated to provide reasonably accurate results.

Affirmed.

Judges BRYANT and CALABRIA concur.