IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-686

No. COA22-115

Filed 18 October 2022

Forsyth County, Nos. 20 CRS 2004-05

STATE OF NORTH CAROLINA

v.

HENRY JOSEPH STEELE

Appeal by defendant from judgment entered 25 August 2021 by Judge Susan E. Bray in Forsyth County Superior Court. Heard in the Court of Appeals 24 August 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Thomas J. Campbell, for the State.*

*Epstein Law Firm, by Drew Nelson, for defendant.*

ARROWOOD, Judge.

¶ 1 Henry Joseph Steele ("defendant") appeals from judgment following guilty verdicts for intimidating or interfering with witnesses and obtaining habitual felon status. On appeal, defendant argues the trial court erred in admitting into evidence a disk containing a phone call recording. For the following reasons, we conclude that defendant received a fair trial free from error.

- 1 -

## I.     Background

On 17 May 2021, a grand jury in Forsyth County indicted defendant on one count of intimidating or interfering with witnesses, alleging that defendant "unlawfully, willfully and feloniously did by threats, menaces, or in any other manner prevent or deter, or attempt to prevent or deter, Lisa Flowers" ("Flowers") "from attending court by telling her not to come to court even if subpoenaed." "Flowers was acting as a victim or witness in" another case against defendant, filed under numbers "20CR01959, 20CR053603, and 20CR053604, in Forsyth County District Court." Defendant was also indicted on the same day for obtaining habitual felon status.

The matter came on for trial on 24 August 2021 in Forsyth County Superior Court, Judge Bray presiding. On the charge of intimidating or interfering with witnesses, for which the defendant waived his right to a jury trial, the State provided testimony from Sergeant Sabrina Robinson ("Sergeant Robinson"), Officer E.L. Klein ("Officer Klein"), and Officer J.M. Reyes ("Officer Reyes"). Flowers was not present at trial.

Sergeant Robinson testified that she had been working at the Forsyth County Detention Center as a "classification supervisor and gate detail adjust [sic] officer" for 21 years. As part of her responsibilities, Sergeant Robinson also acted as a "PayTel administrator[ ]"; PayTel, she described, "is a computerized phone system which allows inmates to make outside calls from the facility and also allows security

to monitor those calls." Sergeant Robinson specifically "monitor[ed] the system for any type of problems or issues[,]" provided "or restrict[ed] user accessibility, and . . . listen[ed] and download[ed] phone calls as needed."

¶ 5        Sergeant Robinson explained that, when inmates use PayTel, "the system" prompts them to type in the phone number they are calling, payment information, and their own "ID number[.]" Inmates receive a unique ID number "[t]he first time Winston-Salem PD or Forsyth County Sheriff's Office come into contact" with them. Thereafter, "each inmate is required to enter that ID number prior to actually making a phone call." PayTel automatically records and maintains records of every phone call made by inmates, and Sergeant Robinson had access to these records.

¶ 6        The State showed Sergeant Robinson its first exhibit ("Exhibit 1"), which she identified as "a spreadsheet that's generated when you download the phone calls." Generally, Sergeant Robinson provided, when a phone call is downloaded, it is accompanied by "a spreadsheet printout of each and every phone call, . . . the station that the phone call was made from, the date that it was made, the billing process, . . . the time of the call, the number that it was called [sic], . . . the length of the call[,]" the inmate's ID number, and the inmate's name associated with that ID number. All of this information is "automatically recorded each time an inmate makes a phone call[.]"

¶ 7     Sergeant Robinson was acquainted with "these types of documents[,]" as they were "made in the regular course of business" at the Forsyth County Detention Center. After the trial court admitted Exhibit 1, the State asked Sergeant Robinson to read it. Exhibit 1 revealed that a phone call was made from Forsyth County Detention Center on 22 December 2020 at 11:24:55 a.m., associated with defendant's first name, last name, and unique ID number.

¶ 8     Next, the State handed Sergeant Robinson its second exhibit ("Exhibit 2"), which she recognized as a disk onto which she had downloaded, upon the State's request, a recording of defendant's 22 December 2020 phone call. After the trial court admitted Exhibit 2 into evidence, the State published it to the bench. In this recording, a man can be heard speaking to a woman, stating, in pertinent part: "[E]ven when they give you a little subpoena thing at your door, they can't do s*** to you, do not come down here, do not come to this courtroom because they're trying to hang me."

¶ 9     Officer Klein, who was employed with the Winston-Salem Police Department, testified that, on 8 April 2020, he was "dispatched to an assault call" at Forsyth Hospital. There, he met Flowers in the Emergency Department; after having a conversation with her, Officer Klein "responded to the magistrate's office" and "swore out charges for assault by strangulation, assault inflicting serious bodily injury, assault on a female, and false imprisonment" in Forsyth County. The trial court then

admitted into evidence the State's third and fourth exhibits, featuring pictures that Officer Klein had taken of Flowers at the hospital.

¶ 10       The State questioned Officer Klein about Exhibit 2; Officer Klein confirmed that he had recognized both voices contained in the recording when the State published Exhibit 2 in open court. The State then proceeded to play a portion of the recording, and Officer Klein stated that he recognized the voice captured therein as that of defendant. The State played another portion of the recording, and Officer Klein recognized the voice captured therein as that of Flowers.

¶ 11       Officer Klein explained that, when he met Flowers at the hospital on 8 April 2020, he spoke with her for "[a]pproximately an hour[,]" and had thus "become familiar" with her voice. Officer Klein testified that he had also heard defendant's voice by virtue of being present at trial. The defense objected, arguing that, because defendant had not testified under oath during these proceedings, but had merely responded to the trial court's inquiry, under defendant's Fifth Amendment right to remain silent, "any statements" defendant may have made "cannot be considered by [Officer Klein] as familiarity with . . . defendant's voice." The trial court sustained the objection.

¶ 12       Officer Reyes, who worked for the Winston-Salem Police Department, testified that, on 17 February 2020, he was "dispatched to an assault on a female" call at Baptist Hospital. There, he met Flowers and observed "injuries to her [sic] right side

of her face." The trial court then admitted the State's fifth and sixth exhibits, featuring pictures Officer Reyes had taken of Flowers on 17 February 2020.

¶ 13 Officer Reyes testified that he spoke with Flowers for "approximately at least 40 minutes" on 17 February 2020. Based upon that conversation, Officer Reyes filed charges for "[a]ssault on a female" in Forsyth County. Because Flowers had also called Officer Reyes during the course of his investigation, he had had the opportunity to hear her voice both over the phone and in-person. Officer Reyes testified that he also spoke with defendant for "15 to 20 minutes."

¶ 14 The State questioned Officer Reyes about Exhibit 2. After Officer Reyes confirmed that he had recognized the two voices depicted in the recording when the State published Exhibit 2 to the bench, the State played a portion of the recording. Officer Reyes recognized defendant's voice, to which the defense made a general objection and was overruled. Then, the State played another portion of the recording, and Officer Reyes recognized Flowers's voice.

¶ 15 As to his ability to identify defendant's voice, Officer Reyes testified that, on 17 February 2020, he was given what he had been told was defendant's phone number. Officer Reyes called the number, which was initially answered by a woman. Then, "[t]he number called back," and Officer Reyes spoke with a man who identified himself as defendant; this individual did not otherwise provide any other personally

identifying information. Officer Reyes testified that this individual stated he knew Flowers and spoke with Officer Reyes about the alleged assault involving Flowers.

¶ 16      When the State asked Officer Reyes whether this individual "was familiar with the facts that [Officer Reyes] [was] going over with him" during the phone call, the defense objected, arguing that the individual's purported self-identification as defendant and the contents of the phone call constituted hearsay. The State, in turn, argued that "it would be a statement by a party opponent." The trial court overruled the defense's objection. Officer Reyes then testified that the individual on the phone identified Flowers as his girlfriend, stated that "nothing [had] happened that night[,]" stated that he "wanted nothing to do with" Flowers, denied assaulting Flowers, and expressed his belief that "[i]t was probably one of the other guys she talks to" who had committed the alleged assault.

¶ 17      After Officer Reyes's testimony, the State introduced into evidence its seventh exhibit, "a release paper on Case No. 20 CR 51959" for defendant, and rested its case. The defense moved to dismiss the case based on insufficient evidence, and the trial court denied the motion. Then, the defense elected not to present evidence and renewed its motion to dismiss, which was again denied.

¶ 18      The trial court entered a verdict of guilty of intimidating or interfering with witnesses. Then, the State proceeded with its charge of obtaining habitual felon status, and defendant once again waived his right to a jury trial. At this stage of the

proceedings, the State introduced three more exhibits, which constituted various past judgments against defendant. At the close of all evidence, the trial court found defendant guilty of obtaining habitual felon status, sentencing him in the mitigated range of 100-to-132 months imprisonment, crediting time served. Defendant gave notice of appeal in open court.

## II.    Discussion

¶ 19        Defendant argues that the trial court erred in admitting the State's Exhibit 2 because Officer Reyes's testimony was insufficient to identify defendant as the alleged speaker in the recording contained therein.

¶ 20        Defendant also states that the standard of review "when assessing whether evidence has been properly authenticated" is *de novo*. This is, however, a mischaracterization of the issue on appeal. "On appeal, the standard of review of a trial court's decision to exclude or admit evidence is that of an abuse of discretion." *Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006) (citation omitted). "An abuse of discretion will be found only when the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation and quotation marks omitted). "In addition, Rule 901 of our Rules of Evidence requires that as a condition precedent to admissibility evidence must be authenticated or identified sufficient to support a finding that the matter in question is what its proponent claims." *Id.* (citation and quotation marks omitted).

¶ 21    Accordingly, although an appellate court's review of whether a trial court properly admitted evidence entails an authentication element, because defendant's argument here is that the trial court erred by *admitting* Exhibit 2, we must review this appeal for abuse of discretion. *See id.*

¶ 22    Here, Exhibit 2 was introduced by the State mid-way through Sergeant Robinson's testimony. Sergeant Robinson testified that she recognized Exhibit 2 as the disk onto which she had downloaded defendant's recorded phone call dated 22 December 2020. Accordingly, Sergeant Robinson properly authenticated Exhibit 2 before the trial court admitted it into evidence. *See id.* ("Authentication under Rule 901 may be satisfied through the testimony of a witness who has knowledge of the matter, and who can testify that a matter is what it is claimed to be." (citations and quotation marks omitted)).

¶ 23    After Sergeant Robinson's testimony, Officer Klein testified, followed by Officer Reyes. It is at this point that defendant takes issue with the trial court's admission of Exhibit 2. Specifically, defendant contends "the [S]tate relied solely on the testimony of Office Reyes to identify the voice heard" even though "Officer Reyes's alleged interaction with [defendant] was limited," in that "it was based on a single phone call, conducted under suspicious circumstances, in which a male speaker professed to be [defendant] and demonstrated a vague, general familiarity with an alleged past assault involving . . . Flowers." According to defendant, "[t]he lack of

information confirming the speaker's identity and the lack of detail in the conversation render this phone call insufficient to connect the voice heard in Exhibit 2 with [defendant]" and, thus, "*the trial court erred by admitting Exhibit 2 as evidence.*" (Emphasis added.)

¶ 24    This argument has no merit for multiple reasons. First, the record indicates that the trial court did not rely solely on Officer Reyes's testimony to identify defendant as the caller on 22 December 2020. Rather, this finding was supported by Sergeant Robinson's testimony and the contents of Exhibit 1, the latter of which contained unaltered information automatically provided by the PayTel system and which unequivocally indicated that defendant had made the phone call in question.

¶ 25    Additionally, defendant's argument is chronologically confused. As illustrated above, the trial court admitted Exhibit 2 into evidence prior to Officer Reyes's taking the witness stand. Indeed, Exhibit 2 was introduced during the testimony of Sergeant Robinson, the State's first witness at trial, who duly authenticated the exhibit. Even assuming *arguendo* that Officer Reyes was not sufficiently equipped to identify defendant's voice in the recording contained in Exhibit 2, this issue has no bearing whatsoever on whether the trial court should have admitted Exhibit 2, because it had already properly done so well before Officer Reyes testified.

¶ 26    Accordingly, the trial court did not abuse its discretion when it admitted Exhibit 2 into evidence.

III.     Conclusion

¶ 27     For the foregoing reasons, we conclude defendant received a fair trial free from

error.

NO ERROR.

Judge GRIFFIN concurs.

Judge TYSON concurs by separate opinion.

No. COA 22-115 – *State v. Steele*

TYSON, Judge, concurring in the result to affirm the trial court's judgment.

Defendant has not shown any basis or prejudice to reverse the trial court's judgment. The trial court's judgment entered herein without a jury trial and after a bench trial is properly affirmed. *See State v. Rutledge,* 267 N.C. App. 91, 832 S.E.2d 745 (2019) (Affirmed); *State v. Porter,* 281 N.C. App. 722, 2022-NCCOA-112, 867 S.E.2d 768 (2022) (Affirmed) (unpublished); *State v. Alexander,* 380 N.C. 572, 2022-NCSC-26, 869 S.E.2d 215 (2022) (Affirmed); *State v. French,* 280 N.C. App. 300, 2021-NCCOA-606, 864 S.E.2d 544 (2021) (Affirmed) (unpublished); *State v. Cranford,* 279 N.C. App. 512, 2021-NCCOA-511, 862 S.E.2d 435 (2021) (Affirmed) (unpublished); *State v. Hamer,* 377 N.C. 502, 2021-NCSC-67, 858 S.E.2d 777 (2021) (Affirmed); *State v. Cheeks,* 377 N.C. 528, 2021-NCSC-69, 858 S.E.2d 566 (2021) (Affirmed).